**Appeal No. 2024-2321**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

PICTOMETRY INTERNATIONAL CORP.,

*Appellant*,

v.

ROOFR INC.,

*Appellee*.

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00436*

# BRIEF FOR APPELLEE

Jim Glass
Ron Hagiz
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
jimglass@quinnemanuel.com
ronhagiz@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000
quincylu@quinnemanuel.com

Yury Kapgan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
yurykapgan@quinnemanuel.com

*Counsel for Appellee*

April 23, 2025

## CLAIM LANGUAGE

**Claims 1, 11, and 18:**

1. One or more non-transitory computer readable medium storing a set of computer executable instructions for running on one or more computer systems that when executed cause the one or more computer systems to:

> identify a geographic location of a roof;
>
> determine a footprint and predominant pitch of the roof by analyzing one or more image showing the roof;
>
> determine an estimated roofing area of the roof based on the predominant pitch and the footprint of the roof; and
>
> generate a roof report for determination of an amount of materials needed for a construction project, wherein the roof report includes at least one image showing the roof and the estimated roofing area of the roof.

11. The one or more non-transitory computer readable medium of claim 10, wherein each pitch value is associated with an estimated percentage of roof area to provide an average pitch value.

18. The roofing estimate method of claim 14, wherein the predominant pitch is based on a weighted average of individual pitch factors for two or more portions of the roof.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-2321

**Short Case Caption** Pictometry International Corp. v. Roofr Inc.

**Filing Party/Entity** Roofr Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/23/2025

Signature: /s/ Ron Hagiz

Name: Ron Hagiz

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Roofr Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Scott Baker<br>Quinn Emanuel Urquhart & Sullivan, LLP | | |
| Sean Gloth<br>Quinn Emanuel Urquhart & Sullivan LLP | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CLAIM LANGUAGE....................i

CERTIFICATE OF INTEREST.................... ii

STATEMENT OF RELATED CASES....................ix

INTRODUCTION....................1

COUNTERSTATEMENT OF THE ISSUES....................2

COUNTERSTATEMENT OF THE CASE....................3

A. The ’538 Patent....................3

B. Summary Of Prior Art....................5

1. Pershing-789....................5

2. Bailey....................7

C. Proceedings At The Patent Trial And Appeal Board....................10

1. Roofr’s Petition....................10

2. Pictometry’s Responses....................11

3. The Board’s Final Written Decision....................13

SUMMARY OF ARGUMENT....................16

STANDARD OF REVIEW....................19

ARGUMENT....................20

I. PICTOMETRY WAIVED ITS CLAIM CONSTRUCTION ARGUMENTS ON APPEAL....................20

A. Pictometry Never Proposed—and the Parties Never Agreed on—a Construction for “Predominant Pitch”....................21

B. Pictometry Conceded that Bailey Discloses the Claimed Predominant Pitch ....... 23

1. Pictometry's Pre-Institution Arguments ....... 24

2. Pictometry's Post-Institution Arguments ....... 24

II. THE BOARD'S FINDINGS THAT PERSHING-789 AND BAILEY RENDER THE CLAIMS OBVIOUS ARE BASED ON SUBSTANTIAL EVIDENCE ....... 26

A. The Board's Final Written Decision Clearly Articulated Its Findings and Reasoning ....... 27

B. The Board Did Not "Fail" To Adopt a Construction Pictometry Never Advanced ....... 33

C. The Board Did Not Shift the Burden to Prove Nonobviousness to Pictometry ....... 37

D. Even If Pictometry's New Claim Construction Is Considered on the Merits, The Board's Findings Should Be Affirmed ....... 39

1. Pictometry's New Construction Contradicts the Intrinsic Evidence ....... 39

2. Pershing-789 and Bailey Render the Claims Obvious Even Under Pictometry's Erroneous Construction ....... 41

3. Pictometry Misstates the Board's Reasoning ....... 42

III. THE BOARD'S FINDINGS THAT CLAIMS 11 AND 18 ARE OBVIOUS ARE BASED ON SUBSTANTIAL EVIDENCE ....... 46

A. The Board Did Not Shift the Burden of Proof ....... 48

B. The Board Properly Relied on Evidence Outside of Bailey in Determining that Claims 11 and 18 Are Obvious ....... 48

C. The Board Properly Considered Pictometry's Argument Regarding Claim 18 ....... 52

CONCLUSION ....... 53

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) ....................32, 45

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ....................30

*Bradium Techs. LLC v. Iancu*,
923 F.3d 1032 (Fed. Cir. 2019) ....................20

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ....................19

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ....................45

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................19

*Hill-Rom Services, Inc. v. Matal*,
716 F. App'x 996 (Fed. Cir. 2017) ....................33

*InTouch Technologies, Inc. v. VGO Communications, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014) ....................37

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ....................51

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ....................19

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................38, 39, 48

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
812 F.3d 1284 (Fed. Cir. 2015) ....................20

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) ....................................................................20

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) ....................................................................51

*Novartis AG v. Torrent Pharm. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) ....................................................................19

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ..............................................................30, 31

*Paice LLC v. Ford Motor Co.*,
881 F.3d 894 ..........................................................................................31, 38, 48

*Personal Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) ......................................................................31

*Realtime Data, LLC v. Iancu*,
912 F.3d 1368 (Fed. Cir. 2019) ....................................................................35

*Regents of Univ. of Cal. v. Broad Inst.*,
903 F.3d 1286 (Fed. Cir. 2018) ....................................................................19

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943)........................................................................................30

*Thorner v. Sony Comp. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................................................................40

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ....................................................................20

**Statutes**

35 U.S.C. § 706.............................................................................................19

## STATEMENT OF RELATED CASES

There have been no prior appeals in this case.

The patent at issue, U.S. Patent No. 9,138,538, is also at issue in a pending district-court case, *Pictometry International Corp. v. Roofr, Inc.*, No. 1:21-cv-01852 (D. Del.).

Pending Appeal No. 24-2322 in this Court involves another patent asserted Pictometry in the above-cited district court case, U.S. Patent No. 10,648,800. This Court has designated that appeal and the instant appeal as companion cases.

# INTRODUCTION

On appeal, Appellant Pictometry International Corp. ("Pictometry") presents a new claim construction argument that it never asserted before the Patent Trial and Appeal Board, then criticizes the Board for failing to address this undisclosed, unasserted claim construction. Specifically, Pictometry argues incorrectly that the parties agreed that the claim term "predominant pitch" is limited to a single value that represents the pitches for the entire roof, and that predominant pitch cannot be the most-common pitch representing the majority of the roof's area. There was no such agreement before the Board, however, nor did Pictometry ever propose this construction or argue that the prior art does not disclose a "predominant pitch" based on this construction. Relying on this new construction, Pictometry then asserts (incorrectly) that the Board failed to make any finding that the prior art discloses a "predominant pitch" and failed to apply the parties' purported "agreed" construction. Because Pictometry never raised these arguments below, they are waived and need not be considered.

But even if these new arguments are considered, they are nonetheless unavailing. Appellee Roofr Inc. ("Roofr") presented ample evidence in its Petition, supported by expert testimony, that the prior art discloses a "predominant pitch." The Board cited to and adopted Roofr's arguments and evidence in determining that the limitation is disclosed and that the claims of the '538 patent are obvious.

Pictometry largely ignores Roofr's arguments and the Board's reasoning in arguing that the Board's determination was erroneous.

Pictometry separately argues that the Board erred in finding dependent claims 11 and 18 (which require the use of a weighted average calculation) obvious when it relied on a construction dictionary that demonstrates weighted average calculations were known in the construction and roofing industries. But Pictometry fails to address the Board's reasoning, which relied on expert testimony explaining why a person of ordinary skill would have combined the reference, including the weighted average teachings in the construction dictionary, to arrive at the claims. Accordingly, Pictometry has failed to show that the Board's determination was not based on substantial evidence or otherwise erroneous.

Thus, the Board's Final Written Decisions finding the challenged claims unpatentable were supported by substantial evidence and should be affirmed.

## COUNTERSTATEMENT OF THE ISSUES

1. Whether Pictometry failed to raise, and thus waived, its claim construction for the term "predominant slope," and its associated arguments that Bailey's "predominant slope" does not satisfy the claimed "predominant pitch";

2. With respect to all claims of the '538 patent:

a. whether the Board's determination that the combination of Pershing-789 and Bailey renders obvious the "predominant pitch" limitations was based on substantial evidence; and

b. to the extent Pictometry's new claim construction argument is considered, whether Pictometry's newly proposed construction should be adopted;

3. With respect to dependent claims 11 and 18:

a. whether the Board's determination that the combination of Pershing-789 and Bailey renders the claims obvious was based on substantial evidence; and

b. whether the Board addressed Pictometry's separate arguments with respect to claim 18.

## COUNTERSTATEMENT OF THE CASE

### A. The '538 Patent

The '538 patent is generally directed towards a "system and process for roof measurement" using an image of a roof. Appx18('538 patent)(Abstract). The challenged claims generally recite: (1) identifying a location of a roof; (2) determining the footprint of a roof; (3) identifying the predominant pitch of the roof by analyzing an image of the roof; (4) determining an estimate of the roofing area;

(5) generating a report estimating the amount of materials needed for a construction project. Appx38('538 patent)(cl.1).

Pictometry has only challenged the Board's conclusions with respect to the "predominant pitch" limitations in the independent claims, as well as dependent claims 11 and 18, which describe how to calculate a "predominant pitch." Specifically, Claim 1 of the '581 patent requires "determin[ing] a predominant pitch of the roof by analyzing one or more image [sic] showing the roof" and "determin[ing] an estimated roofing area of the roof based on the predominant pitch and the footprint of the roof." Appx38. Independent Claims 13 and 14 recite similar limitations. *Id.* Dependent claim 11 recites that "each pitch value is associated with an estimated percentage of roof area to provide an average pitch value." *Id.* Dependent claim 18 similarly recites that "the predominant pitch is based on a weighted average of individual pitch factors for two or more portions of the roof." Appx39.

The '538 patent describes its "predominant pitch" in a single paragraph of the specification. The specification explains that "a predominant pitch value for the roof may be determined." Appx36(12:9-10). In some embodiments, "[t]he predominant pitch value may be a weighted average of individual pitch factors for two or more portions of the roof." Appx36(12:12-15). The specification then provides an example where a predominant pitch is calculated using a weighted average by

calculating a "weighted value" of two portions of a roof, where each "weighted value" is the product of a "pitch factor" and its corresponding percentage of the roof. Appx36(12:15-37). The specification then explains that "an estimated area of the roof may be determined" using "the predominant pitch and outer dimensions provided by the footprint." Appx36(12:37-39).

### B. Summary Of Prior Art

In the proceedings below, Roofr raised multiple references in combination and in the alternative as rendering obvious the challenged claims. Relevant to this appeal are the Pershing-789 and Bailey, as those are the references that disclose the limitations challenged by Pictometry on appeal.

#### 1. Pershing-789

Pershing-789 (U.S. Pat. Pub. No. 2008/0262789) discloses a "system that allows the remote measurement of the size, geometry, pitch and orientation of the roof … and then uses the information to provide an estimate to repair or replace the roof, or to install equipment thereon." Appx1581(Pershing)(Abstract); Appx1591([0003]). More specifically, Pershing-789 discloses using "aerial images of roof sections" to "determine[] the geometry, the slopes, the pitch angles, and the outside dimensions of the roof sections." Appx1591([0011]). This information may then be used to compute "the overall shape, slopes and square footage of the roof sections" and generate a report. Appx1591([0012]); *see also* Appx1592([0024])

("After the angles and dimensions are determined, the combined square footage of the building 92 can be determined which is then used to create a preliminary report 101.").

Pershing-789 provides exemplary pages from a roof report illustrating the measurements estimated from the aerial images (such as pitch) and additional measurements calculated from those estimates (such as area). *See* Appx1585-1590(Figs. 5A-5F). Figure 5E is reproduced below.




FIG. 5E

### 2. Bailey

Bailey is a Technical Report published by the U.S. Army Corps of Engineers, titled "ROOFER: Steep Roofing Inventory Procedures and Inspection and Distress Manual for Asphalt Shingle Roofs." Appx1663(Bailey). Bailey generally teaches methods for collecting data about a roof. Bailey provides a "Roof Section Identification Worksheet" that can be used to "collect[] the inventory data for a roof section." Appx1673. One of the parameters in Bailey's worksheet is "SLOPE

(primary)." Appx1676. Bailey explains that this parameter is "[t]he predominant slope of the roof section." Appx1678. Bailey further explains that "slope" and "pitch" are equivalent terms that both describe the "degree of incline" of a roof. Appx1795. ("The degree of incline a roof possess is usually expressed as its ***'pitch' or 'slope.'***" (emphasis added)). Bailey teaches that an area of the roof can be calculated based on the "horizontal dimensions" of the roof by "adjusting for roof slope." Appx1683.

Although Bailey describes collecting the predominant slope for a "roof section," Bailey defines a "roof section" as any roofing area of 10,000 square feet or less. Appx1671. Thus, in many cases, a "roof section" may comprise the entire roof. For example, Bailey provides an example, illustrated in Figure 2 (reproduced and annotated below), where "all exposed roof areas on the building … would comprise ***one roof section***":




**Figure 2. Example of a building roof comprising a roof section.**

Appx1671-1672 (emphasis added).

Separate from its description of roof data collection methods and predominant slope, Bailey attaches an appendix (Appendix B) from the Asphalt Roofing Manufacturers Association that describes a "Field Measurement Method" for estimating areas of roofs. Appx1794. Bailey explains that field measurements may be required if certain measurements are "not available" from drawings of the roof. Appx1678. Among other things, Bailey's Appendix B explains how to calculate roofing area using the "projected horizontal areas" (*i.e.*, the footprint of the roof) and roof slope. Appx1798. Bailey's Appendix B includes a table that converts measured

slope (in inches per foot) to an "Area/Rake Factor" that may be used directly to calculate area. *Id.*

### C. Proceedings At The Patent Trial And Appeal Board

#### 1. Roofr's Petition

Grounds 1 and 2 of Roofr's Petition addressed obviousness of the challenged claims based on Pershing-789 and Bailey. Appx4.

For all independent claims, the Petition relied on Pershing-789 for the disclosure of analyzing an image of a roof to determine measurements, including pitch measurements, and estimating the roofing area based on those measurements. Appx100; Appx104. The Petition relied on Bailey's disclosure of "predominant slope" in combination with Pershing-789 for obviousness of the independent claim limitations requiring analyzing aerial images to determine a predominant pitch and estimating the roofing area based on the predominant pitch. Appx101; Appx104.

Importantly, Roofr never argued that the term "predominant pitch" requires construction. To the contrary, Roofr's position in the Petition was that "express interpretations of the challenged claims of the '538 patent are not necessary." Appx71. Roofr represented that the prior art ***discloses*** predominant pitch, including as "a weighted average of roof pitch values," but never asserted that the claim term is ***limited*** to a predominant pitch computed as a weighted average of individual pitch values, or any other particular method for calculating or determining a predominant

pitch. *See* Appx69; Appx89. To the contrary, Roofr agreed that the claimed predominant pitch could be "”the one section, one pitch, that is the most frequent, but not taking into account multiple measurements of pitch." Appx511(31:21-24).

For dependent claims 11 and 18, Roofr argued that it would have been obvious to a POSITA to use a weighted average to calculate Bailey's predominant pitch because weighted averages are common and widespread in construction, including roofing, and were understood to generate a value that is "more representative" of a range of values. Appx118-121; Appx129. Roofr's argument was supported by the declaration of its expert, Mr. Tony Cummings, who explained that "weighted average calculations are extremely common in construction, including roofing, and were in widespread use many years before the '538 patent." Appx1541-1542(¶97). Mr. Cummings corroborated his opinion by referencing a widely used construction dictionary that defined the term "weighted average" and explained that it provides an estimate "more representative of the true mean than that obtained by straight averaging." *Id.*; Appx2044.

**2. Pictometry's Responses**

In its preliminary response, Pictometry—not Roofr—argued that the claimed "predominant pitch" must be a weighted average. Appx212 ("Petitioner does not point to any express disclosure in Bailey of computing a weighted average of roof pitch values…."). Pictometry did not offer any support for its limiting construction,

and instead asserted (incorrectly) that the Petition "expressly interprets the term" in this way. Appx211. The Board rejected Pictometry's construction in its Institution Decision, noting that "[n]othing in the claims' plain language limits predominant pitch to a weighted average," particularly because the patent specification teaches that "predominant pitch *may* be a weighted average." Appx250-251 (quoting Appx36(12:11-39)). Pictometry subsequently abandoned this argument, and did not thereafter argue that the term "predominant pitch" requires construction, did not propose a construction for the term, and did not renew its argument that Bailey's "predominant slope" is somehow distinct from the "predominant pitch" recited in the independent claims of the '538 patent.

After institution, Pictometry's response largely did not dispute Roofr's mapping of Pershing-789 to the claims of the '538 patent, nor did it dispute any of Roofr's analysis relating to a POSITA's motivation to combine Pershing-789 and Bailey.[1] *See generally* Appx315-370(Patent Owner Response); Appx426-455(Patent Owner Surreply). Instead, Pictometry's arguments focused on Bailey's disclosure of "predominant slope," arguing that (1) Bailey's "predominant slope" was for a section of a roof and not an entire roof, Appx330-331; (2) Bailey does not

---

[1] Before the Board, Pictometry argued that Pershing-789 does not disclose determining a footprint of a roof. Appx352-356. Pictometry has not raised that argument on appeal.

disclose determining an estimating roofing area based on the predominant slope, Appx332-337; and (3) Bailey does not disclose determining the predominant slope by analyzing images of a roof, Appx337-339. At the oral hearing, counsel for Pictometry conceded the first of these arguments, admitting that "the issue of [whether] the predominant slope [is] only for a roof section or the entire roof" is "irrelevant." Appx536(56:14-17).

With respect to dependent claims 11 and 18, Pictometry additionally argued that Bailey does not disclose using a weighted average to determine a predominant slope. Appx340-351.

#### 3. The Board's Final Written Decision

In its Final Written Decision, the Board rejected Pictometry's arguments relating to the "predominant pitch" limitations, crediting Roofr's arguments and citing to supporting evidence and expert testimony.

The Board began by summarizing Roofr's proposed combination. The Board noted that Roofr "relies on Pershing-789 for analyzing a roof's image to identify the roof's location, footprint, and pitch, and for then estimating the roof's area and generating a roof report," and "relies on Bailey for teaching the claimed 'predominant pitch.'" Appx7. The Board explained that in the proposed combination, "Pershing-789 teaches analyzing a roof's image to identify the roof's footprint and pitch, and estimating the roof's area based on those features" and

"Bailey teaches determining 'predominant pitch.'" Appx8. The Board further noted that the Petition shows "a skilled artisan would have been motivated to [use] Bailey's predominant slope in calculating area because 'it simplifies the calculation of roof estimates, and allows for a more streamlined, yet accurate, estimation.'" *Id.* (citing, *inter alia*, Petitioner's expert declaration).

The Board then addressed each of Pictometry's two remaining arguments. First, the Board addressed Pictometry's argument that Bailey does not teach or teaches away from using predominant slope to calculate area. The Board rejected this argument because it "attacks Bailey individually, rather than the combined teachings of Bailey and Pershing-789 that Petitioner asserts." Appx9. The Board explained that "it is not necessary that Bailey teaches determining an estimating roofing area based on the roof's predominant pitch … because, as outlined above, Petitioner relies on ***the combined teachings*** of Pershing-789 and Bailey for the disputed area-determination feature." *Id.* (emphasis added). The Board also rejected Pictometry's "teaching away" argument because Bailey "does not criticize or counsel against using predominant slope," and "nothing in Bailey's teaching related to using actual slope measurements undermines Petitioner's explanation that one skilled in the art would implement a different feature in Bailey—Bailey's predominant slope—as a simplified, yet accurate way to calculate area." *Id.*

Second, the Board addressed Pictometry's argument that Bailey does not disclose determining a predominant pitch by analyzing images of a roof. Here, again, the Board explained that Pictometry 's argument "attacks Bailey individually, rather than the combined teachings of Bailey and Pershing-789 that Petitioner asserts." Appx9. The Board explained that the Petition "relies on Pershing-789, not Bailey, for that feature" (*i.e.*, analyzing roof images to determine measurements). *Id.* The Board also noted that the Petition provided a rationale as to "why one skilled in the art would have combined Pershing-789's image analysis with Bailey's predominant-slope feature," which was undisputed. Appx 9-10.

Because Pictometry had raised no other arguments regarding the independent claims, the Board "agree[d] with Petition that together, Pershing-789 and Bailey teach" the predominant pitch limitations, and concluded that "Petitioner has articulated sufficient reasoning with rational underpinning to support its assertion that it would have been obvious to combine Bailey's predominant-slope teaching with Pershing-789's area calculation." Appx 10.

With respect to dependent claims 11 and 18, the Board addressed Pictometry's arguments that (1) Bailey does not describe how its predominant slope is calculated, (2) "predominant slope" is not a term of art that would indicate a weighted average, and (3) Bailey's slope-factor chart is not used to determine a predominant pitch. Appx10-11. The Board rejected these arguments because Roofr presented evidence

"beyond Bailey's disclosures … that adequately supports its challenge to the weighted-average feature in dependent claims 11 and 18." In particular, Roofr presented a construction dictionary that demonstrated that using a "weighted average" was "a known way of obtaining an average," and expert testimony demonstrating that a skilled artisan would have been familiar with the use of weighted averages to represent a range of values, and would have been motivated to use that known technique to determine a predominant pitch. Appx11. The Board found that this additional evidence demonstrated that "the weighted-average feature in dependent claims 11 and 18 would have been 'nothing more than the application of a known technique to yield a predictable result" and thus obvious." Appx11.

## SUMMARY OF ARGUMENT

I. Pictometry's challenge to the Board's findings with respect to the independent claims of the '538 patent is premised on a limitation that it did not dispute prior to appeal, and based on a claim construction it never advanced before the Board yet now incorrectly asserts the parties agreed to. Because Pictometry did not advance that argument below, it is waived and need not be considered.

II. The Board's Final Written Decision is supported by substantial evidence. For each disputed limitation, the Board summarized how the Petition mapped the claim language to the prior art, summarized Pictometry's challenges to the those limitations, and then explained why it ultimately agreed with Roofr that

the proposed combination renders the limitations obvious and did not find Pictometry's arguments persuasive. The Board separately summarized the undisputed limitations, explained how Roofr mapped those to the prior art, and stated that it reviewed Roofr's arguments and cited evidence and determined and concluded that Roofr had met its burden of establishing obviousness by a preponderance of the evidence.

Pictometry's primary argument is based on its new construction of "predominant pitch" and associated arguments that were raised below and not preserved. In any event, Pictometry cannot criticize the Board for failing to address in its Final Written Decision an argument and a claim construction Pictometry never presented. Further, even if Pictometry's new argument is considered, it fails on the merits. Pictometry offers no support for its construction of "predominant pitch" to exclude the use of the most common pitch representing the majority of the roof's area, and the '538 specification expressly teaches that the predominant pitch may represent two or more portions of a roof, and need not represent all pitch values associated with the entire roof. Because Pictometry's remaining arguments rely on its new, incorrect claim construction, the Board's determination should be affirmed.

III. The Board's findings with respect to dependent claims 11 and 18, which recite calculating the predominant pitch as a weighted average, were based on substantial evidence. Pictometry's argument on this issue—which criticizes the

Board for failing to make a finding that Bailey discloses weight averages—is misplaced because the Board made clear it was ***not*** relying on a disclosure of weighted averages in Bailey, but instead relying on evidence presented by Roofr "beyond Bailey's disclosures" that established it would have been ***obvious*** to use a weighted average to calculate Bailey's predominant slope. Appx11. In particular, the Board relied on (and expressly cited to) the testimony of Roofr's expert, explaining why a POSITA would have been motivated to use a weighted average to calculate Bailey's predominant slope, and corroborated by a construction dictionary confirming that weighted average calculations are well known and widely used in construction (including roofing).

The Board also expressly considered—but rejected—Pictometry's argument directed to claim 18 for similar reasons. Similar to its argument on weighted averages, Pictometry argued that Bailey itself did not disclose using a slope-factor chart to determine predominant pitch, but failed to address ***obviousness*** of the limitation in view of Bailey—*i.e.*, whether it would have been ***obvious*** to use Bailey's slope-factor chart to determine a weighted average predominant pitch. The Board thus properly relied on Roofr's evidence outside of Bailey in determining that the claim 18 is obvious based on Bailey's express disclosure of predominant slope and slope factors, in combination with the known technique of weighted average calculations.

## **STANDARD OF REVIEW**

Obviousness is a "legal determination" that is based on "subsidiary factual findings." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016); *see also In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015) ("What a reference teaches and the differences between the claimed invention and the prior art are questions of fact …."). Under the Administrative Procedure Act, a Court reviews an agency's factual findings for substantial evidence. *Id.*; 35 U.S.C. § 706.[2] "Substantial evidence" is a deferential standard of review and merely requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017). Substantial evidence is met by "such evidence [that] supports the findings that were in fact made." *Regents of Univ. of Cal. v. Broad Inst.*, 903 F.3d 1286, 1294 (Fed. Cir. 2018).

---

[2] The recent Supreme Court case *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), held that courts cannot defer to agency interpretations of law, but expressly affirmed that courts must continue to defer to agency factfinding under the "substantial evidence" standard. *Id.* at 392 ("Section 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential.").

# ARGUMENT

## I. PICTOMETRY WAIVED ITS CLAIM CONSTRUCTION ARGUMENTS ON APPEAL

Arguments raised for the first time on appeal are waived. *See, e.g.*, *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1294 n.3 (Fed. Cir. 2015) ("[I]f a party fails to raise an argument before the [PTAB] … we may deem that argument waived on appeal."); *In re Watts*, 354 F.3d 1362, 1368 (Fed. Cir. 2004) ("Because the appellant failed to argue his current interpretation of the prior art below, we do not have the benefit of the Board's informed judgment on this issue for our review."). And appellants cannot raise new arguments in the guise of challenging whether a decision was supported by substantial evidence. *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1075 (Fed. Cir. 2017) ("The Board's factual findings in favor of Biscotti are supported by substantial evidence, and any supplemental argument seeking to refute those findings on appeal has been waived."); *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1048 (Fed. Cir. 2019) (argument that Board erred in relying on prior art disclosures deemed waived). Moreover, new arguments directed to the same limitation are also waived. *Biscotti*, 878 F.3d at 1074 ("Microsoft did not present to the Board the full argument that it presents here on appeal.").

Most of Pictometry's arguments on appeal were not preserved below and therefore should be deemed waived. In particular, all of Pictometry's arguments

based on its new claim construction for the term "predominant pitch" and contending that Bailey's "predominant slope" does not satisfy the claimed "predominant pitch" were never raised below and should be deemed waived. *See* Br. 28-47.

### A. Pictometry Never Proposed—and the Parties Never Agreed on—a Construction for "Predominant Pitch"

Pictometry's argument on appeal relies heavily on the assumption that the parties "agreed" that the term "predominant pitch" is limited to "a single value that represents the pitches for the entire roof," and that predominant pitch cannot be "the most-common pitch representing the majority of the roof's area." Br. 31-32. Tellingly, however, Pictometry does not cite to any paper where it proposed this limiting construction or Roofr agreed to it, and none of the documents cited by Pictometry demonstrate an intent by either party to limit the claim term in this way.

Pictometry primarily relies on a statement by Roofr's counsel at the oral hearing that the "predominant pitch" is "a single value that represents the pitches for the entire roof" and "in some way, it is accounting for the entirety of the roof." Appx511(31:13-15). That statement, however, was describing dependent claims 11 and 18, which expressly require calculating the predominant pitch as a weighted average. Appx511(31:2-20) (discussing "these dependent claims that require multiple measurements, or a weighted average). Further, immediately following this exchange, Roofr's counsel confirmed its understanding that the a "predominant pitch" can be determined in other ways, including by using the most common pitch

for the roof. Appx511(31:21-24 ("JUDGE BAER: Wouldn't a predominant pitch just be the one section, one pitch, that is the most frequent, but not taking into account multiple measurements of pitch? MR. HAGIZ: You could."); Appx512(32:1-5) ("You can just pick one and say I'm just going to go with that one. You can take a regular average which just weights everything equally. Or you can take a weighted average.").

Pictometry also asserts that Roofr argued in the Petition that "predominant pitch" must account "for all of the 'pitch values of a roof.'" Br. 31 (quoting Appx90). In fact, however, the quoted statement does not purport to define the term "predominant pitch"; it is part of Roofr's arguments regarding the motivation to combine Pershing-789 and Bailey, and explains that "calculating a predominant pitch" as "a weighted average of pitch values of a roof, has been used in the art ***for decades***." Appx90. Roofr did not argue that a predominant pitch ***must*** be calculated a weighted average, much less that the predominant pitch must otherwise incorporate ***all*** pitch values of the roof. Indeed, the word "all" does not even appear in this passage in the Petition.

Finally, Pictometry cites to passages from both parties' experts' declarations, contending that both experts opined a predominant pitch must account for "all of the pitches of a roof" or "the entire roof." Br. 31 (citing Appx1540(¶94) and Appx4970-4971(¶33)). Neither expert offered any such opinion. Roofr's expert opined

regarding dependent claim 10—which expressly requires the predominant pitch to be based on a "plurality of pitch values"—that a skilled artisan "would have been ***motivated*** to rely on all a roof section's different pitch values when calculating a single 'predominant slope.'" Appx1540(¶94); *see also* Appx1538-1540 (¶¶91-94). He did not opine that the term "predominant pitch" as used in the ***independent*** claims ***must*** account for all of the pitches of a roof. And Pictometry's expert opined that Bailey does not disclose estimating the area of a roof using a predominant pitch, and instead discloses using "actual slopes of each different roof section"—not that the claim term "predominant pitch" cannot be the most common pitch for the roof. Appx4970-4971(¶33); *see also* Appx4968-4972(¶¶30-36).

### B. Pictometry Conceded that Bailey Discloses the Claimed Predominant Pitch

Separate from its new claim construction argument on appeal, Pictometry also failed to preserve its argument that Bailey does not disclose the claimed "predominant pitch." Although Pictometry contends it argued below that Bailey "does not disclose the claimed 'predominant pitch,'" (Br. 20), Pictometry's arguments to the Board were completely different from the arguments it now raises on appeal, and Pictometry expressly abandoned any argument that Bailey's "predominant slope" does not disclose the "predominant pitch" recited in the independent claims of the '538 patent.

### 1. Pictometry's Pre-Institution Arguments

Before institution, Pictometry incorrectly argued in its preliminary response that ***Roofr*** had interpreted "predominant pitch" in the Petition as requiring a weighted average, and that Bailey lacks an "express disclosure … of computing a weighted average of roof pitch values." Appx211-212. Setting aside the fact that Roofr never proposed this construction of "predominant pitch"—as discussed above[3]—the Board also rejected Pictometry's narrow construction in its Institution Decision because "[n]othing in the claims' plain language limits predominant pitch to a weighted average," and the patent specification only indicates that "predominant pitch *may* be a weighted average," not that it ***must*** be a weighted average. Appx250-251 (quoting Appx36(12:11-39)). Pictometry did not re-raise this argument after institution.

### 2. Pictometry's Post-Institution Arguments

After institution, Pictometry initially argued that Bailey fails to disclose a "predominant pitch **of the roof**" because Bailey's "predominant slope" is "for a **section** of the roof, not the entirety of the roof." Appx330-331. In its reply, Roofr pointed out that Bailey expressly teaches that "a 'roof section' may comprise the entire roof." Appx395 (citing Appx1671, which explains that roofs "of approximately 10,000 SF [square feet] or less should be managed as one section");

---

[3] *See* Counterstatement of the Case, Section C.1, *supra*.

*see also* Appx2054(18:7-18) (Pictometry's expert agreeing that "in Bailey, a roof section could comprise an entire roof"). Roofr also noted that there is otherwise "no dispute that Bailey expressly discloses a predominant pitch," and that "Bailey's 'predominant slope' is a predominant pitch." Appx394. In its sur-reply, Pictometry abandoned its argument entirely and did not dispute that Bailey's "predominant slope" is a "predominant pitch" as recited in the independent claims of the '538 patent. *See generally* Appx426-455.

At the oral hearing, Pictometry's counsel confirmed to the Board that it is "irrelevant" whether the predominant slope is "only for a roof section or the entire roof," contradicting its new argument on appeal that a predominant pitch must account for ***all*** pitch values of a roof. Appx536(56:14-17). Specifically, the Board queried whether it "matters" whether Bailey's predominant slope "is for an entire roof or a portion of a roof." Appx505(25:6-25). Roofr's counsel argued that it does not (*see* Appx506(26:1-16)), and Pictometry's counsel later agreed that "the issue of the predominant slope only for a roof section or the entire roof" is "irrelevant." Appx536(56:14-17).

Pictometry did not otherwise dispute that Bailey's "predominant slope" discloses the claimed "predominant pitch." Instead, Pictometry argued that Bailey does not disclose using the predominant pitch ***to determine an estimated roofing area*** (Appx332-337) or determining the predominant pitch ***from one or more***

***images showing the roof*** (Appx337-339). On appeal, however, Pictometry does not contend that the Board erred in finding that these limitations were obvious in view of Pershing-789 and Bailey. Instead, Pictometry claims that the Board erred in finding that Bailey discloses a "predominant pitch" at all. That argument was not preserved.

Importantly, Pictometry never argued to the Board, as it does now on appeal, that Bailey's "predominant slope" is not the claimed "predominant pitch" because "it is simply the most-common pitch of the roof." Br. 17-18. Pictometry's arguments below relating to the "most-common pitch" were only raised in connection with dependent claims 11 and 18, which expressly require a weighted average calculation. *See* Appx340-351. Pictometry did not raise a similar argument with respect to the other challenged claims. Indeed, at the oral hearing, counsel for Pictometry admitted that ***how*** Bailey determines a predominant pitch only "directly relates to the dependent claims." Appx542-543(62:8-63:7).

## II. THE BOARD'S FINDINGS THAT PERSHING-789 AND BAILEY RENDER THE CLAIMS OBVIOUS ARE BASED ON SUBSTANTIAL EVIDENCE

Pictometry does not challenge most of the Board's findings on appeal. With respect to the independent claims, Pictometry only argues that the Board failed to find that Bailey discloses the '538 patent's "predominant pitch," or erred in doing so. *See* Br. 28. Pictometry is incorrect. As discussed further below, the Board's

Final Written Decision expressly and affirmatively found that Bailey discloses the ’538 patent’s “predominant pitch,” relying on the arguments and evidence presented by Roofr—which Pictometry did not dispute and readily conceded at the oral hearing. Pictometry’s new arguments based on a claim construction it never presented to the Board are waived and need not be considered; they are also incorrect on the merits.

Accordingly, the Board’s determination that the claims of the ’538 patent are obvious should be affirmed.

### A. The Board’s Final Written Decision Clearly Articulated Its Findings and Reasoning

Contrary to Pictometry’s arguments (Br. 28-30), the Board affirmatively found that Bailey discloses the claimed “predominant pitch” in its Final Written Description—twice, in fact—and cited to substantial evidence supporting its finding.

***First***, in its discussion of the disputed limitations, the Board began by summarizing the arguments in the Petition, noting, *inter alia*, that “Petitioner explains that Bailey teaches determining ‘predominant pitch’ and a skilled artisan would have been motivated to [use] Bailey’s predominant slope in calculating area because ‘it simplifies the calculation of roof estimates, and allows for a more streamlined yet accurate, estimation.’” Appx8. The Board then cited to relevant portions of Roofr’s Petition and reply, which presented and discussed the supporting evidence, as well as relevant portions of Roofr’s expert declaration. *See* Appx89-90

(explaining that "Bailey expressly teaches finding the 'predominant slope [*i.e.* pitch]" and citing to supporting disclosures in Bailey); Appx99-102 (explaining that "Bailey's disclosure of 'predominant slope' is an express disclosure of 'predominant pitch'" and discussing supporting expert testimony and disclosures in Bailey); Appx1513-1515(¶¶43-45) (expert opinion that Bailey discloses predominant pitch and motivation to combine with Pershing-789).

The Board then explained that Pictometry only "challenge[d] two aspects of Petitioner's analysis": that "Bailey does not teach 'using its "predominant slope" in calculating the roof's area,'" and that "Bailey 'does not disclose or suggest determining a predominant pitch of a roof *by analyzing one or more images showing the roof*' as the challenged claims require." Appx8-9. The Board thus correctly recognized that Pictometry did not separately dispute that Bailey's "predominant slope" discloses the claimed "predominant pitch." Indeed, as discussed above,[4] Pictometry's counsel admitted at the oral hearing that it is "irrelevant" whether Bailey's predominant slope is "only for a roof section or the entire roof." Appx536(56:14-17). Pictometry also admitted in its papers that "skilled artisans often used the general terms slope and pitch interchangeably"—meaning that "predominant slope" and "predominant pitch" are interchangeable terms. Appx330.

---

[4] *See* Section I.B.2, *supra*.

Further, when the Board expressly asked whether Pictometry's argument regarding how Bailey's "predominant slope" is determined "affects the independent claims or just the dependent claims that require the certain way of calculating a predominant pitch," Pictometry's counsel readily admitted that "it directly relates to the dependent claims" only. Appx542-543(62:8-63:7).

After addressing Pictometry's arguments that Bailey does not disclose using predominant slope to calculate a roof's area or determining the predominant pitch from an image showing the roof—both arguments that Pictometry has not raised on appeal—the Board "agree[d] with Petitioner that together, Pershing-789 and Bailey teach 'determin[ing] a footprint and predominant pitch of the roof by analyzing one or more image showing the roof…' as claimed." Appx10. The Board thus expressly found that Bailey discloses the claimed "predominant pitch," relying on the arguments and evidence presented by Roofr.

***Second***, in a section of the Final Written Decision that Pictometry neither cites nor discusses in its brief, the Board separately discussed the "additional undisputed elements" in the independent claims. Appx13-14. As noted above, Pictometry did not dispute that Bailey discloses the claimed "predominant pitch." The Board thus reasoned that "Petitioner relies on Bailey for teaching the claimed 'predominant pitch,'" citing to the pages of the Petition containing the evidence supporting this mapping. Appx13 (citing Appx99-102). The Board explained that "[o]ther than the

arguments addressed above, Patent Owner does not additionally challenge Petitioner's ground-1 obviousness analysis." Appx13-14. The Board then explained that it "reviewed Petitioner's arguments and evidence outlined above and, based on that analysis and for the reasons above, we find Petitioner has shown by a preponderance of the evidence that claims 1-5 and 8-13 would have been obvious over Pershing-789 and Bailey." Appx14. The Board thus expressly adopted Roofr's argument and supporting evidence, as laid out in the Petition, establishing that Bailey discloses the claimed "predominant pitch." Pictometry's assertion that the Board did not make a finding that Bailey discloses "predominant pitch," or did not explain the basis for its finding, is thus plainly incorrect.

To the extent Pictometry contends that more was required of the Board, Pictometry cites no authority that supports such a proposition. Indeed, the cases cited by Pictometry confirm that the APA merely requires that "the grounds upon which the [PTAB] acted be clearly disclosed and adequately sustained." *E.g.*, *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)) (alteration in original). "[P]erfect explanations" are not required—the PTAB's findings may be affirmed so long as this Court "may reasonably discern that [the Board] followed a proper path, even if that path is less than perfectly clear." *Id.* (quoting *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015)) (internal quotation marks omitted). Indeed, "[a]

brief explanation may do all that is needed if, for example, the technology is simple and familiar and the prior art is clear in its language and easily understood." *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 905 (quoting *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017)) (alteration in original). The Board's Final Written Decision more than satisfies that low bar by laying out the "path" that the Board followed: it cites to and discusses the arguments and evidence presented in the Petition, explains that Pictometry did not challenge those arguments and evidence, and ultimately endorses and adopts and them. *See id.* at 905 (finding the Board's reasoning sufficient under the APA where it was "clear from the Board's analysis that it rejected [Patent Owner's] primary arguments," the Board's "obviousness determinations flow[ed] directly from its rejection of these arguments, and the Board's analysis [was] commensurate with [Patent Owner's] arguments," and "the Board's decisions … cite[d] to the relevant portions of Petitioner's briefing that explain how the prior art discloses the relevant claim limitations").

None of Pictometry's cited authority suggests that the Board's findings were insufficient under these facts. In *Nuvasive*, this Court addressed specific requires for articulating motivation to combine, and determined that the Board "failed to explain the *reason why* a PHOSITA would have been motivated" to combine two references as proposed. *Id.* at 1383-84. Here, however, Pictometry does not challenge the Board's findings that a skilled artisan would have been motivated to

combine Pershing-789 and Bailey, and, in any event, the Board expressly adopted the reasoning provided by Roofr and its expert. *See* Appx8 ("Petitioner explains that … a skilled artisan would have been motivated to [use] Bailey's predominant slope in calculating area because 'it simplifies the calculation of roof estimates, and allows for a more streamlined, yet accurate, estimation.'"); Appx10 ("Further, given Petitioner's rationale as outlined above, Petitioner has articulated sufficient reasoning with rational underpinning to support its assertion that it would have been obvious to combine Bailey's predominant-slope teaching with Pershing-789's area calculation.

In *Alacritech, Inc. v. Intel Corp.*, this Court held that the Board's findings were insufficient where the Board failed to "acknowledge [an] aspect of the parties' dispute," "did not endorse, adopt, or otherwise suggest that it was persuaded by [the] arguments [in the Petition]," and ultimately presented findings that "appear[ed] to be untethered to either party's position." 966 F.3d 1367, 1371-72 (Fed. Cir. 2020). None of those facts apply here. As noted above, there was no dispute that Bailey's "predominant slope" discloses the claimed "predominant pitch," and Pictometry's counsel confirmed at the oral hearing that this issue was undisputed for the independent claims. Appx536(56:14-17); Appx542-543(62:8-63:7). Further, the Board expressly endorsed and adopted Roofr's arguments and supporting evidence as laid out in the in the Petition. Appx10; Appx14.

And in *Hill-Rom Services, Inc. v. Matal*, this Court held that the Board's decision was insufficient under the APA where the Board only provided "ambiguous" statements regarding where it believed a limitation was disclosed in the prior art, and failed "to clearly articulate a motivation to combine." 716 F. App'x 996, 1004-05 (Fed. Cir. 2017). That is not the case here: the Board clearly adopted Roofr's argument that Bailey's "predominant slope" is the claimed "predominant pitch," and Pictometry does not challenge the Board's findings on motivation to combine. *See* Appx8; Appx10; Appx14.

Accordingly, Pictometry has failed to show that the Board's findings were insufficient under the APA.

### B. The Board Did Not "Fail" To Adopt a Construction Pictometry Never Advanced

Pictometry next argues that the Board erred by "failing to apply the parties' shared interpretation of 'predominant pitch.'" Br. 31-36. But Pictometry's argument fails at the outset because Pictometry never presented any such interpretation to the Board and never argued that Bailey's "predominant slope" is different from the claimed "predominant pitch" under the purported "shared interpretation." Accordingly, Pictometry waived that argument. *See supra* Section I.

To the contrary, the record evidence demonstrates that ***neither*** party contended that a predominant pitch "must account in some fashion for the pitch of

every roof section" and cannot be "the most-common pitch representing the majority of the roof's area," as Pictometry now contends. Br. 31-32. As discussed above,[5] Roofr's Petition did not offer a construction of the term "predominant pitch" and did not otherwise argue that the independent claims require any particular method of determining a predominant pitch; it merely asserted that the prior art's disclosure of a weighted average calculation of predominant slope is *sufficient* disclosure of the claimed "predominant pitch." *See, e.g.*, Appx90. Further, Roofr's counsel expressly confirmed at the oral hearing that using "one section, one pitch, that is the most frequent, but not taking into account multiple measurements of pitch" would still be a "predominant pitch" as recited in the claims of the '538 patent. Appx511(31:21-24; Appx512(32:1-5).

Pictometry, on the other hand, never offered any construction for the term "predominant pitch" and abandoned its early arguments that Bailey fails to disclose a predominant pitch because it does not disclose a weighted average calculation, or only determines a predominant slope for a section of a roof. *See* Section I.B, *supra*. And at the oral hearing, Pictometry's counsel admitted that any Pictometry's arguments relating to how Bailey determines a predominant pitch only "directly

[5] *See* Section I.A, *supra*.

relate[] to the dependent claims" and does not affect the independent claims. Appx542-543(62:8-63:7).

Because there was neither a proposed construction nor an implicit "agreed-upon" interpretation, as Pictometry contends (Br. 31-32), the Board could not err by failing to apply any such construction or interpretation. Nor can Pictometry now criticize the board for not "explain[ing] what it believed the claim term means." Br. 32. Indeed, Pictometry acknowledges that claim terms "need only be construed 'to the extent necessary to resolve [a] controversy' between the parties." *Id.* (quoting *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019)). But, as discussed above, Pictometry did not present any "controversy" to resolve.

The remainder of Pictometry's argument relies on the premise that the Board "assumed" that Bailey's "predominant slope" is the same as the claimed "predominant pitch" because they use "similar language." Br. 32-36. Pictometry is incorrect. The Board did not need to make any assumptions—it relied on the undisputed evidence. As explained by the Board in its Final Written Decision, the Petition presented argument and evidence that Bailey's "predominant slope" expressly discloses the claimed "predominant pitch." Appx8 ("Petitioner explains that Bailey teaches determining 'predominant pitch'….") (citing Appx89-90, Appx99-102, and Appx1513-1515); Appx99-102 (explaining that "Bailey's disclosure of 'predominant slope' is an express disclosure of 'predominant pitch'"

and discussing supporting expert testimony and disclosures in Bailey); Appx1513-1515(¶¶43-45) (expert opinion that Bailey discloses predominant pitch). That aspect of the claims was not disputed by Pictometry. Appx8-9 (identifying the "two aspects" of the independent claims disputed by Pictometry); *see also* Section I.B, *supra*. The Board then relied on Roofr's undisputed arguments and supporting evidence in determining that Bailey's "predominant slope" discloses the claimed "predominant pitch." Appx10 ("[W]e agree with Petitioner that together, Pershing-789 and Bailey teach 'determin[ing] a footprint and predominant pitch of the roof by analyzing one or more image showing the roof…' as claimed."); Appx13-14 ("We have reviewed Petitioner's arguments and evidence outlined above and, based on that analysis and for the reasons above, we find Petitioner has shown by a preponderance of the evidence that claims 1-5 and 8-13 would have been obvious over Pershing-789 and Bailey.").

Indeed, at the oral hearing Pictometry expressly confirmed that any differences between Bailey's "predominant slope" and the claimed '"predominant pitch" was immaterial to the patentability of the independent claims. After Pictometry's counsel argued that "nothing in Bailey … tells you how to calculate a predominant pitch," the Board expressly asked whether those arguments "affect[] the independent claims or just the dependent claims that require the certain way of calculating a predominant pitch." Appx542-543(62:8-63:3). Pictometry's counsel

confirmed that the arguments only "directly relate[] to the dependent claims, 10, 11, and 18), and only "[i]ndirectly relate[] to the independent claim 1" insofar as they "go[] to the credibility of the expert." Appx543(63:4-7). Despite this clear question from the Board, Pictometry's counsel never asserted that ***how*** predominant pitch is determined is in any way relevant to the analysis of the independent claims.

The Board was justified in relying on Pictometry's representation to conclude that any differences between Bailey's "predominant slope" and the claimed "predominant pitch" were only relevant to the dependent claims that required a weighted average calculation. That understanding was also consistent with Pictometry's representation in its papers "skilled artisans often used the general terms slope and pitch interchangeably," confirming that "predominant slope" and "predominant pitch" are interchangeable terms. Appx330. For that reason, the cases Pictometry relies on, such as *InTouch Technologies, Inc. v. VGO Communications, Inc.* , 751 F.3d 1327 (Fed. Cir. 2014)—where the record evidence demonstrated a material difference in scope between a claim limitation and the prior art—are inapposite here.

### C. The Board Did Not Shift the Burden to Prove Nonobviousness to Pictometry

Pictometry's only stated basis for contending that the Board "shifted the burden of proof" is that the Board explained why Pictometry's arguments failed to rebut the obviousness analysis presented in the Petition. *See* Br. 36-37. That is

entirely proper and does not reflect a shifting of the burden of proof. *See Paice*, 881 F.3d at 905 (affirming Board's obviousness determinations where the Board's "obviousness determinations flow[ed] directly from its rejection of [Patent Owner's] arguments, and the Board's analysis [was] commensurate with [Patent Owner's] arguments," and "the Board's decisions … cite[d] to the relevant portions of Petitioner's briefing that explain how the prior art discloses the relevant claim limitations").

Pictometry again incorrectly argues that the Board "assumed" that Bailey's "predominant slope" is the claimed "predominant pitch." Br. 37. As discussed above, however, the Board reached that conclusion based on the undisputed evidence presented by Roofr, and after Pictometry admitted that any distinction between Bailey's "predominant slope" and the claimed "predominant pitch" only affects the dependent claims that require a weighted average calculation. *See* Section II.C, *supra*. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364 (Fed. Cir. 2016), is distinguishable on that basis. In *Magnum*, found that the Board faulted the Patent Owner for failing to rebut assertions the Petitioner never proved. *Id.* at 1378. For example, the Board criticized the Patent Owner for failing to explain "why an obviousness argument based on a first set of prior art references … that the Board did not adopt would not be applicable to a second set of prior art references," where "[n]either the Board nor the petitioner explained why borrowing the rationale for

combining the first set of references equally applies to the second set of references." *Id.* But the *Magnum* decision is clear that the Court was "not suggesting that any reference to 'rebuttal' evidence by the Board would constitute reversible error." *Id.*

Here, as discussed above, Pictometry did not even present "rebuttal" evidence or argument that Bailey's "predominant slope" does not disclose the claimed "predominant pitch" in the independent claims. *See* Section I.B, *supra*. Pictometry instead argued that Bailey does not disclose using predominant slope to calculate roofing area or determining the predominant pitch from an image of a roof. *See* Appx332-339. The Board considered those arguments, but ultimately determined that Roofr's arguments and evidence on these issues were more persuasive. Appx9-10. That does not reflect a burden shift. *See Magnum*, 829 F.3d at 1378. In any event, Pictometry does not challenge the Board's findings that Pershing-789 and Bailey render these limitations obvious; it only presents the new argument that Bailey does not disclose a "predominant pitch" at all.

### D. Even If Pictometry's New Claim Construction Is Considered on the Merits, The Board's Findings Should Be Affirmed

#### 1. Pictometry's New Construction Contradicts the Intrinsic Evidence

As discussed above, Pictometry's new arguments based on an undisclosed claim construction for "predominant pitch" are waived and should not be considered

on appeal. Even on the merits, however, Pictometry's arguments should be rejected, and the Board's findings should be affirmed.

Pictometry's argument is premised on the incorrect assumption that the parties adopted an "agreed-upon interpretation of 'predominant pitch' requiring the predominant pitch to be representative of each roof section's pitch." Br. 37-38. As discussed above, there was no such agreement, and Roofr expressly argued at the oral hearing that a predominant pitch may be determined in other ways, including by selecting the single most often occurring pitch on the roof. *See* Appx511(31:21-24; Appx512(32:1-5); Section I.A, *supra*.

Pictometry does not otherwise offer any support for its newly proposed construction of "predominant pitch," and the construction is not supportable under the principles of claim construction. Pictometry admits that by excluding a "most-common pitch," its new construction would expressly limit the claim term beyond its admitted plain. *See* Br. 11 (admitting that "'predominant pitch' is not a term of art" and "the plain-English meaning of 'predominant pitch' suggests the 'most-frequent or common' pitch"). But Pictometry does not identify any definition or disclaimer in the specification to justify limiting "predominant pitch" in this way. *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (claim terms "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art" except "1) when a patentee sets

out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term").

Nor does any support exist in the intrinsic evidence. The '538 patent's specification discusses the "predominant pitch" in a single paragraph. Appx36(12:8-39. No definition is provided in that paragraph; instead, the specification provides a single example of how the predominant pitch "***may*** be determined" in "some embodiments" using a weighted average. Appx36(12:10-14). In its Institution Decision, the Board rejected a similar construction attempting to limit "predominant pitch" to a "weighted average" on the same basis. Appx250-251 (quoting Appx36(12:11-39)). Pictometry has never challenged that determination. The specification also expressly contradicts Pictometry's new construction requiring the predominant pitch to "be representative of each roof section's pitch." Br. 37-38. The specification expressly teaches that the predominant pitch may be based on "individual pitch factors for ***two or more portions*** of the roof"—not ***every*** portion of the roof. Appx36(12:12-14) (emphasis added). Pictometry offers no justification for excluding this disclosed embodiment from the scope of the claims.

#### 2. Pershing-789 and Bailey Render the Claims Obvious Even Under Pictometry's Erroneous Construction

Pictometry's erroneous and untimely new construction also does not warrant disturbing the Board's findings for the independent reason that the claims are rendered obvious even under that construction. As discussed in more detail below,

the Board correctly determined that Pershing-789 and Bailey render dependent claims 11 and 18 obvious because they render obvious using a weighted average to determine predominant pitch. Appx10-11. Pictometry does not argue on appeal that the claimed "predominant pitch" excludes weighted averages—nor can it, since dependent claims 11 and 18 expressly require the predominant pitch to be computed as a weighted average. Accordingly, for the same reasons articulated with respect to dependent claims 11 and 18, Pershing-789 and Bailey render the claimed "predominant pitch" obvious even under Pictometry's erroneous new construction.

### 3. Pictometry Misstates the Board's Reasoning

In arguing that the Board's conclusion was not supported by substantial evidence (Br. 43-47), Pictometry misstates the Board's reasoning in the Final Written Decision. As an initial mater, as noted above, Pictometry never advanced its newly proposed construction before the Board, nor did it argue that Bailey does not disclose the claimed "predominant pitch." *See* Section I, *supra*. Thus, the Board's reasoning in the Final Written Decision was not in response to Pictometry's new argument that Bailey's "predominant slope" is materially different from the claimed "predominant pitch." Instead, the Board responded to the arguments Pictometry ***did*** raise below—namely, that "Bailey does not teach 'using its "predominant slope" in calculating the roof's area,'" and that "Bailey 'does not disclose or suggest determining a predominant pitch of a roof *by analyzing one or*

*more images showing the roof*' as the challenged claims require." Appx8-9. On appeal, Pictometry does not challenge the Board's findings that these limitations were disclosed; accordingly, those findings should not be disturbed. Pictometry's arguments do not otherwise show that the Board erred in finding, based on the undisputed evidence, that Bailey discloses the claimed "predominant slope."

First, Pictometry contends that the Board did not cite to Bailey or any relevant expert testimony from Roofr's evidence. Br. 43-44. But Pictometry fails to acknowledge that the Board cited to the relevant portions of Roofr's Petition, which presented and discussed the supporting evidence, and expressly based its findings on that analysis. *See* Appx8 (citing *inter alia* Appx89-90 and Appx99-102); Appx89-90 (explaining that "Bailey expressly teaches finding the 'predominant slope [*i.e.* pitch]" and citing to supporting disclosures in Bailey); Appx99-102 (explaining that "Bailey's disclosure of 'predominant slope' is an express disclosure of 'predominant pitch'" and discussing supporting expert testimony and disclosures in Bailey); *see also* Appx13 (citing Appx99-102); Appx14 (determining the claims are obvious after "review[ing] Petitioner's arguments and evidence outlined above and, based on that analysis and for the reasons above").

Second, Pictometry argues that the Board failed to "grappl[e] with Pictometry's arguments based on the record evidence." Br. 44. But, as discussed above, Pictometry never offered any argument or evidence that Bailey's

"predominant slope" does not disclose the claimed "predominant pitch," nor does Pictometry point to any such arguments in its brief. *See* Section I.B, *supra*.

Third, Pictometry argues that the Board's rejection of Pictometry's arguments for "attack[ing] Bailey individually, rather than the combined teachings of Bailey" is a "non-sequitur" because Roofr "relied *only on Bailey for determining predominant pitch*." Br. 44-45. But the passage in question is responding to Pictometry's argument that Bailey does not disclose "using its 'predominant slope' in calculating the roof's area." Appx8-9. As the Board correctly noted, and Pictometry does not dispute, Roofr did not rely on Bailey alone for that aspect of the claims; it relied on Bailey "only for teaching predominant pitch" and "not for the claimed area determination. Appx9. Pictometry did not—and still does not—offer any argument that the combination of Pershing-789 and Bailey renders obvious calculating a roof area using a predominant pitch, and Pictometry did not and does not challenge Roofr's analysis on motivation to combine. *See* Appx8-9; Br. 44-45. And, as noted above, the Board did separately make an express, affirmative finding that Bailey discloses the claimed "predominant pitch," based on the undisputed arguments and evidence presented in the Petition. *See* Section II.A, *supra*; Appx10; Appx 13-14.

Fourth, Pictometry argues that the Board "faulted Pictometry for addressing Bailey's Appendix B." Br. 45. No such criticism appears in the Board's decision.

The Board merely addressed Pictometry's argument that Bailey's Appendix B teaches away from calculating a roof area using predominant slope by describing a method of calculating area separately for each slope. Appx8 (responding to Pictometry's arguments in Appx332-334, Appx336).

Fifth, Pictometry argues that the Board analysis of the "teaching away" argument was "wrong as a matter of law" because a reference that does not teach away may still be relevant to motivation to combine. Br. 46. But Pictometry never argued that a POSITA would not have been motivated to combine Pershing-789 and Bailey, nor did Pictometry challenge or dispute Roofr's motivation to combine analysis. Thus, Pictometry's argument is not responsive to the Board's analysis. Pictometry's argument on Appendix B—and the argument addressed by the Board—was that Appendix B teaches away from calculating a roof area using a predominant pitch because it discloses a method of calculating a roof area using individual slopes. *See* Appx336. As the Board correctly explained, however, the law is clear that simply describing an alternative way to calculate a roof area without "criticiz[ing] or counsel[ing] against using predominant slope" does not provide a teaching away. Appx9 citing (*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2009)); *see also Alacritech*, 966 F.3d at 1373 (holding that Board's finding of motivation to combine was supported by substantial evidence where prior art "merely expresses a preference and does not teach away from" the claim

limitation, and the Board "express[ly] endorse[d] … other arguments offered by [Petitioner] in favor of the combination").

Sixth, Pictometry argues that the Board was "factually wrong" for suggesting that Bailey's Appendix B "describes a technique for determining pitch *as an alternative* to the method described in Chapter 2." Br. 46. As discussed above, however, the Board made no such finding, because Pictometry did not dispute that Bailey discloses the claimed predominant pitch. Instead, the Board was responding to Pictometry's argument that Bailey's Appendix B teaches away from ***calculating the roof area*** using predominant pitch because it describes an alternative way of calculating roof area using individual slopes. Appx9.

* * *

For all the reasons provided above, the Board's determination that Pershing-789 and Bailey render obvious the claims of the '538 patent should be affirmed.

## III. THE BOARD'S FINDINGS THAT CLAIMS 11 AND 18 ARE OBVIOUS ARE BASED ON SUBSTANTIAL EVIDENCE

Pictometry separately argues that the Board erred in determining that claims 11 and 18 are obvious. Pictometry is incorrect—the Board's finding is based on substantial evidence.

The Board expressly relied on and endorsed Roofr's evidence "that adequately supports its challenge to the weighted-average feature in dependent claims 11 and 18." Appx11. The Board's Final Written Decision describes the

arguments and evidence it relied on, including a construction dictionary that established a "weighted average" calculation was a known technique in the relevant art, expert testimony explaining why "one skilled in the art would have been motivated to use a weighted average to calculate Bailey's predominant slope," thus establishing that "a skilled artisan 'would have been familiar with the use of weighted averages generally to determine an average representative of a range of values,' and 'would have known that using a weighted average to determine a value representative of a range of source values leads to a more accurate result.'" Appx11 (citing Appx119-120, Appx128, Appx407, Appx1541-1542(¶97), and Appx2044).

The Board considered the three arguments raised by Pictometry in response, all of which asserted that Bailey does not by itself disclose calculating a predominant slope using weighted averages. Appx10; Appx343-351. Ultimately, however, the Board did not find Pictometry's arguments persuasive because none of them rebutted Roofr's argument and evidence—which the Board endorsed and adopted—that a POSITA would have found it ***obvious*** to calculate Bailey's predominant slope as a weighted average, based on evidence "beyond Bailey's disclosures." Appx11.

As detailed below, none of Pictometry's arguments on appeal warrant disturbing the Board's findings.

### A. The Board Did Not Shift the Burden of Proof

Without any explanation or analysis, Pictometry incorrectly argues that the Board "shifted the burden, requiring Pictometry to prove" that Bailey discloses or renders obvious the weighted average dependent claims. Br. 47-48. Pictometry's argument appears to based on the same erroneous argument discussed above with respect to the independent claims. *See* Section II.C, *supra*. However, where, as here, the Board cites to and endorses the Petitioner's briefing mapping the prior art to the claims, and ultimately determines that the claims are obvious after rejecting the Patent Owner's arguments, no "burden shifting" has occurred, and the Board's reasoning is sound. *See Paice*, 881 F.3d at 905. Unlike in *Magnum*, the Board did not expect Pictometry to rebut obviousness arguments that Roofr did not advance or support in the first instance—it merely found that Pictometry's arguments were not persuasive compared to Roofr's evidence and arguments establishing obviousness. *See* Appx10-11.

### B. The Board Properly Relied on Evidence Outside of Bailey in Determining that Claims 11 and 18 Are Obvious

Pictometry argues that the Board erred by relying on the RSMeans Construction Dictionary in its determination that claims 11 and 18 are obvious. Br. 48-51.[6] Pictometry is incorrect.

---

[6] Pictometry also argues that Roofr's "front-line position in its petition" was that "Bailey's predominant slope is itself 'a weighted average of roof pitch values.'"

As an initial matter, the Board did not "exclusively" rely on the RSMeans Dictionary. The Board explained that Roofr presented evidence "beyond Bailey's disclosures," which included both the RSMeans Construction Dictionary that confirms a weighted average was a known technique, as well as reasoning provided by Roofr's expert explaining why a skilled artisan would have been motivated to use the known weighted average technique to calculate Bailey's predominant slope. Appx11 (citing Appx1541-1542(¶97) and Appx2044).

On appeal, Pictometry does not dispute that weighted average calculations were known in the art and used in construction, including roofing. Pictometry instead argues that the prior art of record cannot support an obviousness finding because the RSMeans Construction Dictionary does not specifically disclose a predominant pitch and used weighted average values to calculate a predominant pitch. Br. 49. For example, Pictometry argues that "the dictionary says nothing of pitches" and that "there is no connection between the dictionary and Bailey." Br. 50. Pictometry similarly argues that showing "that weighted averages were known"

---

Br. 48. It is not clear what Pictometry means by "front-line" position. The Petition presented two alternative theories: (1) that a POSITA would understand that Bailey's "predominant slope" is itself a weighted average, Appx119; and (2) that it would have been obvious to a POSITA to calculate Bailey's "predominant slope" using a weighted average, Appx119-120. In its reply, Roofr primarily focused on the second of these two theories based on obviousness. *See* Appx404-409. The Board similarly relied on the obviousness theory presented by Roofr. *See* Appx11.

is ”insufficient to establish a motivation to modify Bailey as a matter of law.” Br. 51.

The Board, however, did not rely on the RSMeans Construction Dictionary alone in finding that claims 11 and 18 were obvious. As Roofr explained in its reply, which the Board cited and endorsed, Roofr's expert, Mr. Cummings, explained that roof pitch can either be computed separately for each roof facet, or provided as a single value. Appx407; Appx1515-1516(¶46); *see also* Appx7 (citing Appx407). Pictometry's expert also acknowledged that a skilled artisan would have known that a single slope value can be used as a "predominant pitch." Appx407; Appx4988(¶67). Roofr also explained, relying on Mr. Cummings' opinion, that a skilled artisan "would have been familiar with the use of weighted averages generally to determine an average representative of a range of values," and would have been motivated to use the undisputed known weighted average technique to calculate Bailey's predominant slope "because the resulting pitch value … would be more accurate." Appx407-408; Appx1541-1542(¶97). The fact that the RSMeans Construction Dictionary does not itself teach to use weighted averages to calculate predominant slope, specifically, is of no moment where Roofr provided a motivation to combine the references as proposed.

Pictometry does not address any of this reasoning in the Board's decision when it asserts that the Board "never articulated a legally relevant reason to use a

weighted average to calculate Bailey's predominant slope." Br. 51. Nor does Pictometry cite any authority suggesting the Board's reasoning was erroneous. Instead, Pictometry cites to authority that holds that obviousness requires a motivation to combine. *See* Br. 51. But, as explained above, Roofr provided a motivation to combine, which the Board relied on and adopted in finding the claims. obvious.

In its sur-reply before the Board, Pictometry argued that there would be no motivation to combine because Bailey already discloses a "fairly accurate measurement" technique "*without* calculating an average of pitches or pitches values." Appx441. Pictometry has not raised this argument on appeal; however, it is also legally incorrect. Under the Supreme Court's ruling in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007), "[i]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." That is precisely the case here. Pictometry does not contend that weighted average calculations were beyond the skill of a POSITA. Further, this Court has expressly rejected the argument that a POSITA would not be motivated to consider alternative designs, even if a *better* alternative already exists in the prior art. *In re Mouttet*, 686 F.3d 1322, 1334 (Fed.

Cir. 2012) ("[M]ere disclosure of alternative designs does not teach away" even if "better alternatives exist in the prior art").

### C. The Board Properly Considered Pictometry's Argument Regarding Claim 18

Pictometry separately argues that with respect to dependent claim 18, the Board failed to consider Pictometry's argument that Bailey's area/rake conversion table "doesn't determine pitch" or average individual pitch factors. Br. 52. But Pictometry misunderstands Roofr's proposed obviousness combination—and, by extension, misunderstands the Board's reasoning.

As Roofr explained in its reply, it never argued that Bailey's conversion table discloses determining a predominant pitch using a weighted average. Appx408-409. Rather, Bailey's conversion table merely demonstrated that a POSITA would have known that a slope can be represented as a pitch factor—and must be converted to a pitch factor when it is used to calculate the area of a roof. Appx408; Appx1551-1552(¶127). Instead, Roofr relied on the same analysis as claim 11 (*i.e.*, Bailey's predominant pitch and the known technique of weighted average calculations) to argue that the use of a weighted average calculation to determine predominant pitch is rendered obvious by the prior art. Appx409.

As the Board acknowledged, Pictometry argued that that Bailey's "slope-factor chart is insufficient for the claimed feature" because it is not used "to determine predominant pitch." Appx11. However, the Board disagreed with this

argument (and Pictometry's other arguments relating to both claims 11 and 18) because Roofr relied on evidence "beyond Bailey's disclosure," and thus was not relying on Bailey's slop-factor chart, alone, to render the claim obvious. Accordingly, the Board did not fail to consider or address Pictometry's additional argument relating to claim 18.

## CONCLUSION

The Board's Final Written Decision finding all claims of the '538 patent unpatentable should be affirmed.

Dated: April 23, 2025

Respectfully submitted,

*/s/ Ron Hagiz*

Jim Glass
Ron Hagiz
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
jimglass@quinnemanuel.com
ronhagiz@quinnemanuel.com

Yury Kapgan
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
yurykapgan@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000
quincylu@quinnemanuel.com

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(2)(A). The brief contains 11,037 words according to the word count of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally-spaced typeface, 14 point Times New Roman, using Microsoft Word.

Dated: April 23, 2025

*/s/ Ron Hagiz*
Ron Hagiz
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016

*Attorney for Appellee*