**No. 2024-2321**

# United States Court of Appeals for the Federal Circuit

PICTOMETRY INTERNATIONAL CORPORATION,

*Appellant*,

*v.*

ROOFR, INC.,

*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00436

## PICTOMETRY'S REPLY BRIEF

Richard A. Crudo
Michael D. Specht
Jonathan Tuminaro
William H. Milliken
Richard M. Bemben
Jennifer Meyer Chagnon
Steven M. Pappas
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K Street, NW
Floor 10
Washington, DC 20005
(202) 371-2600

*Counsel for Appellant*
*Pictometry International Corporation*

May 28, 2025

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2321

**Short Case Caption** Pictometry International Corporation v. Roofr Inc.

**Filing Party/Entity** Pictometry International Corporation

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/30/2024

Signature: /s/ Michael D. Specht

Name: Michael D. Specht

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Pictometry International Corporation | | EagleView Technology Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Marc Brockhaus<br>Dunlap Codding, P.C. | Ann Robl<br>Dunlap Codding P.C. | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ............................................................................................3

I. ROOFR'S WAIVER ARGUMENTS ARE UNAVAILING. ........................................3

A. The Parties Had a Shared Understanding of What "Predominant Pitch" Means. ......................................................................3

B. Pictometry Vigorously and Consistently Disputed that Bailey Discloses the Claimed "Predominant Pitch." ....................................8

II. THE BOARD ERRED IN HOLDING THE '538 PATENT CLAIMS OBVIOUS. ..........14

A. If Pictometry Is Correct that the Parties Agreed to the Meaning of "Predominant Pitch," the Court Should Reverse. ..............................14

B. If Roofr Is Correct that the Parties Did Not Agree to the Meaning of "Predominant Pitch," then Roofr Should have Said What the Term Means, and the Board Should Have Construed it. ....................15

C. Roofr's Other Arguments in Defense of the Board's Ruling Fail. .....19

III. THE BOARD INDEPENDENTLY ERRED IN HOLDING DEPENDENT CLAIMS 11 AND 18 OBVIOUS. .........................................................................21

A. Roofr's Attempt to Backfill the Board's Decision with Expert Testimony Fails. ...................................................................22

B. Roofr's Defense of the Board's Ruling as to Claim 18 Distorts Both the Petition and the Board's Findings (or Lack Thereof). .........28

CONCLUSION ........................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas AG v. Nike, Inc.*,
963 F.3d 1355 (Fed. Cir. 2020) ....................................................................30

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) ....................................................................20

*Allentown Mack Sales & Service, Inc. v. NLRB*,
522 U.S. 359 (1998)......................................................................................21

*Amazon.com*, *Inc. v. Barnesandnobel.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ....................................................................18

*AMP Plus, Inc. v. DMF, Inc.*,
131 F.4th 1320 (Fed. Cir. 2025) ...................................................................31

*Aqua Products, Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) (en banc) ....................................................27

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ......................................................................16

*Brand v. Miller*,
487 F.3d 862 (Fed. Cir. 2007) ......................................................................27

*CSR, PLC v. Skullcandy, Inc.*,
594 F. App'x 672 (Fed. Cir. 2014) ................................................................18

*Cuozzo Speed Technologies v. Commerce for Intellectual Property*,
579 U.S. 261 (2016) (Alito, J., concurring in part) ..........................................3

*Digital-Vending Services International, LLC v. University of Phoenix, Inc.*,
672 F.3d 1270 (Fed. Cir. 2012) ......................................................................7

*DSS Technology Management, Inc. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018) ....................................................................25

*Gechter v. Davidson*,
116 F.3d 1454 (Fed. Cir. 1997) ....................21

*In re Google LLC*,
56 F.4th 1363 (Fed. Cir. 2023) ....................25, 29

*In re Google Technology Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................15

*Homeland Housewares, LLC v. Whirlpool Corp.*,
865 F.3d 1372 (Fed. Cir. 2017) ....................17

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................15

*Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*,
68 F.4th 1298 (Fed. Cir. 2023) ....................11

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017) ....................26

*Nelson v. Adams USA, Inc.*,
529 U.S. 460 (2000)....................13

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) ....................30

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................20

*Paice LLC v. Ford Motor Co.*,
881 F.3d 894 (Fed. Cir. 2018) ....................19

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008) ....................17

*SAS Institute, Inc. v. Iancu*,
584 U.S. 357 (2018)....................15

*TF3 Ltd. v. Tre Milano, LLC*,
894 F.3d 1366 (Fed. Cir. 2018) ....................4

*Toro Co. v. Deere & Co.*,
355 F.3d 1313 (Fed. Cir. 2004) ....................................................................18

*TQ Delta, LLC v. Cisco Systems, Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) ....................................................................30

*Virtek Vision International ULC v. Assembly Guidance Systems, Inc.*,
97 F.4th 882 (Fed. Cir. 2024) ......................................................................25

**Statutes**

35 U.S.C. § 312(a)(3)........................................................................................15

**Other Authorities**

37 C.F.R. § 42.104(b)(3)-(4)..............................................................................15

## INTRODUCTION

As Pictometry's opening brief showed, the parties agreed that the claimed "predominant pitch" does not encompass simply a roof's most-common pitch—i.e., the pitch that covers the majority of the roof. BBr. 31-32. But the Board did not apply that shared understanding nor explain what it believed the correct claim interpretation to be. The Board merely assumed that Bailey's "predominant slope" is the claimed "predominant pitch" given the similarity in terminology. This is legal error: a proper invalidity analysis cannot be based solely on a words-to-words comparison between the term and the prior-art disclosure. *Id.* at 32-36. Roofr does not dispute that principle. Nor does Roofr dispute that the "predominant slope" in Bailey—which focuses on manually collecting roof data as quickly as possible—is the most-common pitch. *Id.* at 37-42. Those two concessions are dispositive.

Roofr's entire defense of the Board's ruling rests on its claim that the parties never shared an understanding of what "predominant pitch" means, and that Pictometry allegedly "conceded" that Bailey's "predominant slope" satisfies the limitation. RBr. 20-26. In other words, Roofr contends that Pictometry gave the case away by admitting that the crux of the '538 patent's invention was disclosed in the prior art. In light of that purported concession, Roofr says, the Board was justified in invalidating all of Pictometry's claims in just a few pages of analysis.

On its face, that narrative is implausible. And when considered in the context of the record as a whole, the narrative is demonstrably false. The record makes clear that the parties *did* come to share an understanding that "predominant pitch" does not encompass the most-common pitch. Nor did Pictometry concede that Bailey satisfies the limitation. On the contrary, Pictometry stated that the claimed "predominant pitch" "*is not what is presented in Bailey*[.]" Appx544(64:2-4); Appx547-548(67:22-68:2) (emphases added). There was no forfeiture.

Not only is Roofr's forfeiture argument wrong, it backfires. If, as Roofr argues, the parties did not agree that "predominant pitch" excludes the most-common pitch, then Roofr—as the petitioner bearing the burden of proof—should have said what it thought the term means, and the Board should have resolved any dispute by expressly construing the term. Neither Roofr nor the Board did so. Even now, for as much as Roofr says about why Pictometry's interpretation is waived and wrong, Roofr does not say precisely what *it* thinks is the right interpretation.

Without even attempting to understand what the term means, the Board could not have permissibly concluded that Bailey discloses it. And this Court, in turn, cannot confirm that the Board engaged in rational decisionmaking. Thus, regardless of whether the parties agreed on the meaning of "predominant pitch," the Board's ruling cannot stand.

As for dependent claims 11 and 18, Roofr does not try to defend the Board's obviousness ruling based on the Board's actual findings (or lack thereof). Rather, Roofr backfills the Board's analysis with argument and evidence the Board never considered, much less relied upon. That is improper under basic principles of administrative law. It is also fundamentally unfair to Pictometry. Roofr—as the IPR petitioner—enjoyed the ability to define the contours of the proceeding. But with that power comes the burden of defining the contours clearly. Roofr failed to do so, leaving Pictometry to "shoot into the dark." *Cuozzo Speed Techs. v. Commerce for Intell. Prop.*, 579 U.S. 261, 296 (2016) (Alito, J., concurring in part). And yet, the Board excused Roofr's failure by invalidating Pictometry's claims anyway. Respectfully, the Court should not permit such a result.

## ARGUMENT

### I. ROOFR'S WAIVER ARGUMENTS ARE UNAVAILING.

Roofr's principal argument is that Pictometry forfeited any dispute as to the meaning of "predominant pitch" and conceded that Bailey discloses it. *See* RBr. 21-26. As explained below, Roofr is mistaken on both counts.

#### A. The Parties Had a Shared Understanding of What "Predominant Pitch" Means.

According to Roofr, the record does not reveal a shared understanding of what "predominant pitch" means. RBr. 21-23. But Roofr reaches that conclusion by focusing on certain statements in isolation, divorced from important context

about how the parties' arguments evolved over the course of the IPR. That context demonstrates why Roofr is wrong.

In its petition, Roofr argued that the claimed "predominant pitch" is a weighted average. Roofr denies that now, but the very first page of Roofr's petition is clear: "Prior art roof measurement techniques also included the claimed 'predominant pitch' measurement—*i.e., a weighted average of roof pitch values*[.]" Appx69 (emphasis added); Appx90. The phrase "i.e." is definitional, meaning that, in Roofr's view at the time, the claimed predominant pitch *is* a weighted average. *TF3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366, 1372 (Fed. Cir. 2018) ("The usage 'i.e.' ('*id est'* or 'that is'), signals an intent to define the word to which it refers." (cleaned up)). If there were any doubt as to what Roofr argued, it is resolved by its own expert, who testified that "calculating a predominant pitch" "*is merely the computation of a weighted average of pitch values of a roof*[.]" App1515(¶46) (emphasis added). Roofr's expert did not say that predominant pitch merely *includes* a weighted average—he said it "*is*" a weighted average. For this reason, Roofr's attempt to attribute its narrow construction to Pictometry fails. Pictometry merely argued that Roofr failed to demonstrate that Bailey teaches a "predominant pitch" under Roofr's "*own interpretation*" of the claims. Appx211 (emphasis added).

The Board ultimately rejected Roofr's interpretation, Appx250, but the mere

fact that Roofr proposed it in the first place confirms that Roofr understood the claims *not* to encompass the pitch that simply covers the majority roof. BBr. 32 n.5; Appx344; Appx4982(¶67).

After institution, Roofr broadened its view of "predominant pitch." But even still, Roofr's understanding of the term was not so broad as to encompass the most-common pitch. For example, Roofr and its expert argued that:

- "Bailey expressly teaches determining a predominant slope *corresponding to an entire roof*." Appx398 (emphasis added).
- "measuring individual slopes is necessary even if the predominant pitch is used to estimate the roof area because *the predominant pitch is determined from the individual slopes* of different portions of the roof." Appx399-400 (emphasis added).
- "*the type of measurement that the '538 patent refers to as a 'predominant pitch''*"—i.e., a "weighted average of pitch values of a roof," Appx1515(¶46)—"has been used for decades," Appx406 (emphasis added).
- "[w]hen estimating a single *predominant* slope value, it would be important to *account for all of the pitches of a roof*" because, "[o]therwise, *the single pitch value could not properly be referred to as the 'predominant'* or 'primary' pitch." Appx118; Appx1540(¶94) (emphases added).[1]

Pictometry and its expert agreed that "predominant pitch" must account for the pitches of the entire roof and thus does not encompass the most-common pitch:

[1] Roofr asserts (at 22-23) that this statement is tied to dependent claim 10 rather than the independent claims. But, in fact, the quote makes clear that Roofr and its expert were tying the statement to the meaning of "predominant" itself.

- "[e]ach of the independent claims require 'determining a predominant pitch of the roof by analyzing one or more image showing the roof." Appx330. "A fundamental flaw of Petitioner's argument is that the disclosure of 'predominant slope' in Bailey's Worksheet is the 'predominant slope' *for a section of the roof, not the entirety of the roof*." *Id.* (emphasis added).

- in claim 1, "the estimated roofing area of the entire roof is determined based on a *single predominant pitch of the entire roof*." Appx4970-4971(¶33) (emphasis added).[2]

Thus, while neither party expressly construed the phrase "predominant pitch," their submissions confirmed a similar understanding of the phrase's meaning.

The issue was also addressed at the oral hearing, where Roofr's counsel stated that the claimed "predominant pitch *is* a single value that represents the pitches for the entire roof." Appx511(31:13-15) (emphasis added). On its face, that statement undermines Roofr's argument here. And when considered in the context of the parties' arguments leading up to the hearing, the statement decisively resolves the issue in Pictometry's favor.

None of Roofr's contrary arguments holds water. Roofr insists (at 21-22) that its counsel's statement was limited to the dependent claims. While Roofr's statement arose in the context of answering questions about the dependent claims,

---

[2] Roofr contends (at 23) that Pictometry's expert was making an argument unrelated to the one Pictometry makes on appeal. This misses the point—regardless of which argument he was making, Pictometry's expert expressed his understanding that "predominant pitch" has to account for the entirety of the roof.

the statement was not so limited. After all, the dependent claims expressly require the predominant pitch to be a weighted average. Appx38(16:15-23); Appx39(17:16-18). So there was no reason for Roofr to have clarified its understanding of what "predominant pitch" means in the dependent claims—the claims themselves tell us.

From context, it is clear that Roofr's counsel was referring to the meaning of "predominant pitch," more generally. Indeed, Roofr's counsel prefaced his statement with the clarification that he was referring to "*the nature of what a predominant pitch is*," Appx511(31:12-13) (emphasis added), irrespective of where it is recited. That makes sense—the phrase "predominant pitch" must have the same meaning across all claims. *Digital-Vending Servs. Int'l, LLC v. University of Phx., Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012). Roofr's effort to cabin its admission to the dependent claims is thus unavailing.[3]

Along these same lines, Roofr contends that Pictometry's counsel "admitted that *how* Bailey determines a predominant pitch only 'directly relates to the dependent claims.'" RBr. 26, 29, 34-35, 37 (quoting Appx542-543(62:8-63:7)).

---

[3] In fact, Roofr itself blurs the line between the independent and dependent claims. For example, in an effort to show that the dependent claims' weighted-average limitation would have been obvious, Roofr cites to its expert's testimony addressing a motivation to combine Bailey with Pershing-789 vis-à-vis the independent claims. RBr. 50 (citing Appx1513-1516(¶¶43-46)).

That is wrong. Pictometry's counsel observed that whether Bailey discloses a weighted average "directly relates to the dependent claims" because those claims require a weighted average. Appx543(63:4). But he also said that the issue "[i]ndirectly relates to the independent claim[s]" and discussed why Bailey does not disclose a "predominant pitch" in those claims. Appx543-544(63:5-64:4).

Roofr next cites a subsequent passage of the oral hearing transcript in which its counsel said—according to Roofr—that a "predominant pitch" can be determined in "other ways," including by using the most-common pitch. RBr. 21-22 (citing Appx511-512(31:21-32:5)). But Roofr's counsel merely said that there are "other ways"—beyond a weighted average—to derive "a single measurement" from "multiple measurements." He did *not* say that the derived value from each of those other ways *is* the claimed "predominant pitch." In fact, as mentioned above, Roofr's own expert confirmed that a single measurement "could not properly be referred to as the 'predominant' or 'primary' pitch" if it does not "account for all of the pitches of a roof." Appx1540(¶94).

The full record thus supports Pictometry's view: the parties agreed that "predominant pitch" does not encompass the most-common pitch.

### B. Pictometry Vigorously and Consistently Disputed that Bailey Discloses the Claimed "Predominant Pitch."

Nor did Pictometry concede that Bailey discloses the claimed "predominant pitch." As early as its pre-institution response, Pictometry argued that Roofr failed

"to demonstrate that Bailey discloses the claimed 'predominant pitch.'" Appx209. And, contrary to Roofr's suggestion otherwise, Pictometry carried that argument through to its post-institution papers.

For example, in its patent owner response, Pictometry argued that Bailey does not "provide any information or discussion about where its 'predominant slope' comes from or what it means," and that "[t]here is no mention" in Bailey of a "predominant pitch" "as required by the claims." Appx329; Appx331. Pictometry also pointed out that Roofr's own expert "testified that Bailey does not determine … a predominant slope." Appx331 (citing Appx5058-5059(63:19-64:14)). Similarly, in its sur-reply, Pictometry emphasized that Bailey "provides no guidance on how to determine its 'predominant slope'" and thus does not "disclose[] or suggest[] the 'predominant pitch' limitations." Appx429-430.

If all that were not enough, Pictometry reiterated this point at the oral hearing. There, Pictometry's counsel stated that Roofr's obviousness argument effectively presented "a claim construction issue." Appx544(64:2-4). Elaborating on this point, he unambiguously asserted that the claimed "predominant pitch" "*is not what is presented in Bailey*":

> [O]ur expert had to explain what it was in the context of the ’538 Patent. … [I]t’s essentially *a claim construction argument* on what is predominant slope. And we think we’ve presented that here. Clearly, that’s consistent with the specification, the claims, industry references that don’t define it as a term of art, and our expert’s testimony. And that definition, that concept is *not what is presented in Bailey*, the predominant slope.

Appx547-548(67:22-68:2) (emphases added); *see also* Appx565(85:4-5) (“[W]hat we’re most interested in this case is the construction for predominant slope”). Again, these statements were made in the context of addressing the ’538 patent’s dependent claims, but their significance extends beyond those claims since “predominant pitch” must carry the same meaning across the claims.

Ignoring this context, Roofr claims (at 28, 37) that Pictometry conceded that “predominant slope” and “predominant pitch” are “interchangeable terms.” That is unequivocally false. The cited passage from says only that Pictometry “does not contest that skilled artisans often used the general terms *slope* and *pitch* interchangeably.” Appx330 n.2 (emphases added); *see also* BBr. 8 n.1. But Pictometry never suggested that the full phrases “predominant slope” and “predominant pitch” are the same. Quite the opposite: Pictometry argued that the phrases have “*different meanings*” despite their use of “similar words.” Appx543-544(63:25-64:1) (emphasis added). Clearly, then, Pictometry preserved the argument that Bailey’s predominant slope is *not* the claimed predominant pitch.

Roofr also claims (at 25-28) that Pictometry's arguments to the Board focused on whether Bailey uses its predominant slope to determine an area, not on whether Bailey discloses a "predominant pitch" in the first place. That contention is based on a cramped reading of Pictometry's arguments. As explained above, Pictometry's front-line argument was broad: Bailey does not "provide any information or discussion about where its 'predominant slope' comes from or what it means." Appx329; *see also* Appx331 ("[T]here is no mention of 'a predominant pitch'" in Bailey "as required by the claims.").

Pictometry referred to this as the "fundamental flaw" in Roofr's obviousness arguments. Appx329. Pictometry then made more-specific arguments "[b]eyond this fundamental flaw," including the argument that Bailey does not use its predominant slope to determine area. *Id.* But the mere fact that Roofr made—and focused on—more specific arguments does not erase Pictometry's broader argument. The point is that *both* sets of arguments "address the same, general issue." *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*, 68 F.4th 1298, 1305 (Fed. Cir. 2023) (finding that appellate argument addressed the same issue raised below and thus was preserved, notwithstanding that "[t]he exact phrasing of the argument" was different and more detailed).

Trying a different tack, Roofr contends that Pictometry's counsel conceded that "it is 'irrelevant' whether the predominant slope is 'only for a roof section or

the entire roof'" since, in Bailey, a roof section may comprise the entire roof. RBr. 24-25 (quoting Appx536(56:14-17)). Roofr again takes the quoted passage out of context. Pictometry's counsel was responding to questions about Pictometry's argument that Bailey does not use its predominant slope to calculate the area of the entire roof. Appx436 ("That Bailey discloses an example roof with a single section does not indicate that a POSITA would have used Bailey's predominant slope to estimate roofing area.").

In any event, Pictometry's statement at the oral hearing is not in any way inconsistent with the arguments that Pictometry makes here. As Roofr's own image shows, even when Bailey's roof comprises a single section, that section can include multiple pitches:




RBr. 9 (citing Appx1671-1672). The point is that Bailey's predominant slope does *not* account for those multiple pitches (regardless of whether the roof is represented by one section or multiple sections).

Finally, citing Appx13, Roofr asserts (at 29-30) that the Board expressly found that Bailey's disclosure of the claimed "predominant pitch" was undisputed. This mischaracterizes the decision. In the cited passage, the Board observed that certain claim elements were "undisputed," including "identifying a roof's location, analyzing roof images, determining roofing area, and generating a roof report." Appx13. But the "predominant pitch" limitation is *not* listed among those elements. In fact, when citing petition pages corresponding to arguments that were undisputed, the Board *omitted* pages addressing the "predominant pitch" limitation. *Compare id.* (listing pages 25-31, 34-35, 53-54, 59-61 of the petition as undisputed), *with id.* (noting that Roofr's "predominant pitch" limitation corresponds to pages 31-34 of the petition).

Thus, the Board did not find that Bailey's disclosure of the claimed "predominant pitch" was undisputed—rather, the Board assumed without finding that Bailey's disclosure was sufficient.

* * *

Pictometry did more than enough to preserve these issues for appeal. To the extent Roofr contends that Pictometry should have done more, it demands too much—issue preservation "does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000). Pictometry put

both Roofr and the Board on notice that the case would turn on the meaning of "predominant pitch," just as it now argues on appeal. There is no forfeiture.

## II. THE BOARD ERRED IN HOLDING THE '538 PATENT CLAIMS OBVIOUS.

### A. If Pictometry Is Correct that the Parties Agreed to the Meaning of "Predominant Pitch," the Court Should Reverse.

Roofr does not dispute that Bailey's "predominant slope" is simply the most-common slope of a roof, in keeping with Bailey's goal of manually collecting a large amount of data quickly. BBr. 38-43. Thus, if the Court finds that the parties did indeed agree that the claimed "predominant pitch" does *not* encompass the most-common pitch, it should reverse.

Roofr suggests (at 39, 41-42) that, even if Pictometry's interpretation of the claims is correct, the Court can still affirm the Board's ruling based on Roofr's obviousness theory for the dependent claims. Not so. As an initial matter, Roofr's obviousness arguments for the dependent claims are themselves flawed. *See infra* Section III. So those arguments do not help Roofr for the independent claims.

Roofr's attempt to leverage its arguments for the dependent claims fails for other reasons too. To start, those arguments were not made in the petition vis-à-vis the independent claims. As Roofr concedes (at 10), its petition argued only that "the prior art *discloses* predominant pitch." *See also* BBr. 44-45 (collecting citations). The Board itself acknowledged as much elsewhere in its decision. *See* Appx7 ("Petitioner relies on Bailey for teaching the claimed 'predominant

pitch.'"); Appx8 (same). Entertaining a new argument based on obviousness grounds that Roofr never raised would impermissibly allow Roofr to depart from the invalidity grounds set forth in its petition. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 365-366 (2018). And, because the argument was not raised below, it is forfeited on appeal. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862-863 (Fed. Cir. 2020). Thus, Roofr's belated attempt to invalidate the independent claims based on new obviousness theories should be rejected.

### B. If Roofr Is Correct that the Parties Did Not Agree to the Meaning of "Predominant Pitch," then Roofr Should have Said What the Term Means, and the Board Should Have Construed it.

Even if Roofr were correct that the parties did not see eye to eye as to the meaning of "predominant pitch," that would only make matters worse for Roofr. As petitioner, it was *Roofr's* burden to explain in the petition "[h]ow the challenged claim is to be construed" and "[h]ow the construed claim is unpatentable." 37 C.F.R. § 42.104(b)(3)-(4); *see also* 35 U.S.C. § 312(a)(3). After all, it is the petition which "define[s] the scope of the litigation all the way from institution through to conclusion." *SAS*, 584 U.S. at 367. Thus, "[i]t is of the utmost importance that petitioners … adhere to the requirement that the initial petition identify with particularity the evidence that supports the grounds for the challenge to each claim." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (cleaned up).

But as Roofr freely acknowledges (at 34), it never identified how "predominant pitch" should be construed, either in its petition or elsewhere. That failure should have been fatal because Roofr does not dispute that "predominant pitch" is *not* a term of art. BBr. 11-12. Nor does Roofr contend that "predominant pitch" is limited to its plain-English meaning. In fact, Roofr seems to assert that "predominant pitch" is not limited to *any* particular meaning, noting that it can be determined by "just pick[ing]" *any* pitch and calling it the "predominant pitch." RBr. 10, 21-22; Appx512(32:1-5). That unbounded construction cannot be correct, as it reads the phrase "predominant pitch" out of the claims altogether. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (explaining that reading limitations out of a claim would "be contrary to the principle that claim language should not be treated as meaningless").

Regardless, once the Board rejected Roofr's argument that "predominant pitch" is a weighted average, it was incumbent upon Roofr to explain what it believed the phrase means and why Bailey discloses it. Roofr did neither. Instead, it simply equated the '538 patent's "predominant pitch" with Bailey's "predominant slope" based on similarity in language. *See* Appx394 ("As explained in the Petition, Bailey teaches determining a 'predominant slope' of a roof section. [Pictometry] admits that the terms 'slope' and 'pitch' are used interchangeably in the relevant art. Thus, Bailey's 'predominant slope' is a predominant pitch."

(cleaned up)); Appx505(25:13-14).

Likewise, if there truly were a bona fide dispute as to the meaning of "predominant pitch," the Board should have resolved the dispute by construing the term. *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1375 (Fed. Cir. 2017) ("Just as district courts must, when the parties raise an actual dispute regarding the proper scope of ... claims, ... resolve that dispute, the Board also must resolve such disputes in the context of IPRs." (cleaned up)); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323-1324 (Fed. Cir. 2008) (tribunals have "an independent obligation to construe the terms of a patent" to resolve a dispute). But the Board did not do that either. Rather, after finding (in its institution decision) that "predominant pitch" is not limited to a weighted average, the Board declared (in its final written decision) that "no claim terms require express construction." Appx4.

The Board's analysis begs the question: if "predominant pitch" does not mean a weighted average—and if Roofr never conceded a broader meaning, as described above, *see supra* Section I.A—then what *does* it mean? And, without saying what it means, how could the Board have determined that Bailey discloses it? How can *this* Court say whether the Board engaged in reasoned decisionmaking and that the Board's path is reasonably discernible if the Board never made the requisite findings to sustain its obviousness conclusion?

The answer, of course, is that it cannot: "it is impossible to know exactly what the [prior art] must disclose" without knowing "the precise scope" of the relevant limitation in the first place. *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1319 (Fed. Cir. 2004). Rather, "[o]nly when a claim is properly understood can a determination be made … whether the prior art anticipates and/or renders obvious the claimed invention." *Amazon.com*, *Inc. v. Barnesandnobel.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *see also CSR, PLC v. Skullcandy, Inc.*, 594 F. App'x 672, 678 (Fed. Cir. 2014) ("Without a construction of the term, it is impossible to review the Board's findings.").

In the end, Roofr cannot have it both ways. Either the parties *did* share a common understanding that "predominant pitch" does not encompass the most-common pitch, in which case the Board should have concluded that Bailey does not disclose the limitation, *or* it was incumbent upon Roofr to say what it thought the term means and upon the Board to resolve the claim-construction dispute. But the Board did neither, and therein lies the problem. If the Court concludes that there was a dispute as to the meaning of "predominant pitch," it should vacate the Board's decision and remand for the Board to resolve the dispute.

**C. Roofr's Other Arguments in Defense of the Board's Ruling Fail.**

Most of Roofr's arguments are tied to its forfeiture argument. Accordingly, they fail for all the reasons stated above. *See supra* Section I.

Roofr's remaining arguments also fail. As Pictometry's opening brief showed (at 28-31), the Board failed to provide any analysis as to why Bailey discloses the "predominant pitch" limitation and thus committed an APA violation. Roofr's response (at 27-30, 36, 43) is that the Board "expressly adopted" Roofr's arguments and expert testimony and thus did not need to provide any analysis. But the Court would be hard pressed to find any indication that the Board adopted Roofr's arguments or evidence, much less "expressly" so.

Rather, as Roofr elsewhere acknowledges (at 27), the Board merely "summarize[d]" Roofr's arguments and then found that Pictometry's countervailing arguments were wrong, all in just a couple of pages. Appx8-10. That is in stark contrast to Roofr's cited case, *Paice LLC v. Ford Motor Co.*, 881 F.3d 894 (Fed. Cir. 2018), in which the issues were "familiar based in part on [the petitioner's] repeated arguments in related proceedings and the Board's *hundreds of pages of analysis*." *Id.* at 905 (emphasis added).

Roofr makes much of the fact that the Board cited Roofr's papers when summarizing its argument. RBr. 31. But this Court has rejected the argument that "favorably citing" to the petition's "extensive discussion" of evidence is sufficient.

*Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1371 (Fed. Cir. 2020) (cleaned up). Rather, the Board must actually make "an explanation-supported *finding that the evidence affirmatively proved*" the petitioner's invalidity ground. *In re NuVasive, Inc.*, 842 F.3d 1376, 1384 (Fed. Cir. 2016) (emphasis added).[4] The Board did not do that here.

Roofr also argues (at 35, 38) that the Board did not "assume" that Bailey's "predominant slope" is the same as the claimed "predominant pitch" based on their "similar language." But that assertion is belied by Roofr's own arguments. Roofr argued that Bailey "express[ly]" discloses "predominant pitch" based *solely* on Bailey's and the '538 patent's similar language, and nothing more. *See* Appx99-102. The Board's adoption of that argument—even if we could be certain that the Board adopted it—does not mitigate the problem; it *is* the problem. As explained at length in Pictometry's opening brief, the mere fact that a prior-art reference uses the same or similar language as a challenged patent claim is not dispositive of invalidity. BBr. 33-34 (collecting cases). Roofr does not dispute this.

---

[4] Roofr tries to distinguish *NuVasive* on the basis that the case involved motivation to combine, which Pictometry does not dispute here. RBr. 31. That misses the point—*NuVasive* makes clear that "it is not adequate to summarize and reject arguments without explaining why the PTAB accepts the prevailing argument," regardless of the nature of the arguments at issue. 842 F.3d at 1383.

Roofr next emphasizes (at 44-45) that it relied on the combination of Bailey and Pershing-789 to disclose a claim limitation requiring the predominant pitch to be used to calculate area. This is misdirection—Roofr relied on Bailey *alone* to disclose "determin[ing] a … predominant pitch," and the Board never made a finding as to *that* limitation.

At bottom, more was required of the Board—it should have looked under Bailey's hood to assure itself that Bailey's "predominant slope" is indeed the same as the claimed "predominant pitch." At the very least, the Board should have explained why it believed it did not have to perform that analysis. Without such an explanation, it is impossible to tell whether the Board engaged in the "reasoned decisionmaking" that the APA demands. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374, 379 (1998); *Gechter v. Davidson*, 116 F.3d 1454, 1460 (Fed. Cir. 1997) (vacating Board decision that lacked "any explanation for whether, how, and why" the prior art discloses certain limitations, and where the Board did "not say" that the limitations' presence in the art "was conceded").

## III. THE BOARD INDEPENDENTLY ERRED IN HOLDING DEPENDENT CLAIMS 11 AND 18 OBVIOUS.

Roofr's arguments for the dependent claims not only ignores context, it impermissibly backfills the Board's analysis with arguments and evidence on which the Board did not rely. Roofr's arguments fail as a matter of basic administrative law and illustrate just how deficient the Board's ruling actually is.

### A. Roofr's Attempt to Backfill the Board's Decision with Expert Testimony Fails.

**1.** As explained above, Roofr does not dispute that Bailey's "predominant slope" is the most-common pitch of a roof rather than a weighted average of pitches for each roof section (despite taking the position in its petition that "predominant pitch" *is* a weighted average). The Board tacitly agreed—it looked "beyond Bailey's disclosures" and relied on an obviousness theory to reach the dependent claims. *See* Appx11; *see also* Appx548(68:11-12) (Board panel member agreeing with Pictometry "that Bailey doesn't have that disclosure" of a weighted average). Thus, all agree there is a gap between what the dependent claims require (a weighted average) and what Bailey actually discloses (the most-common pitch). BBr. 48-49. The only question for the Court, then, is whether Roofr and the Board adequately filled that gap.

They did not. As explained in Pictometry's opening brief, the RSMeans Dictionary on which both Roofr and the Board relied says nothing about predominant pitch or even about using weighted averages for roofs.[5] *Id.* at 49-50. Far from disputing this, Roofr concedes it. Roofr admits that the dictionary "does

---

[5] Roofr says (at 49) that Pictometry "does not dispute" that weighted-average calculations were "known" in "roofing" applications. That is false. Pictometry emphasized in its opening brief that the RSMeans Dictionary does not describe the concept of weighted averages in the context of roofing. BBr. 49.

not itself teach to use weighted averages to calculate predominant slope." RBr. 50.

In fact, the dictionary does not connect the concepts of weighted averages and predominant pitch at all. The dictionary simply states that weighted averages are "believed to be more representative of the true mean than that obtained by straight averaging." Appx1933. From this definition, the Board concluded that using a weighted average "was a known way of obtaining an average." Appx11. Even assuming that is true, it is irrelevant. Whether or not weighted averages are better than straight averages or were known has no bearing on the question whether it would have been obvious to use a weighted average *in place of Bailey's most-common pitch*.

The Board's confusion is perhaps best illustrated by its statement that a skilled artisan "would have been motivated to use a weighted average *to calculate* Bailey's predominant slope[.]" Appx11 (emphasis added). That statement makes little sense. Bailey's predominant slope is determined by *measuring* each roof section's pitch and selecting the one corresponding to the majority of the roof. BBr. 14-18, 41; RBr. 7 (acknowledging that "Bailey generally teaches methods for *collecting data* about a roof" (emphasis added)). No calculations are involved. Why would a skilled artisan use a weighted average to calculate that which Bailey does not calculate?

That the Board focused its analysis on calculating averages—even though no such calculations are disclosed in Bailey—underscores that the Board's obviousness analysis was altogether divorced from Bailey. That was legal error. BBr. 50.

**2.** Perhaps recognizing the problem with the Board's treatment of the RSMeans Dictionary, Roofr turns to its expert testimony. *See* RBr. 50. According to Roofr, its expert filled the gap between Bailey and the dependent claims even if the dictionary does not. That argument fails for several reasons.

To start, the Board did not rely on such testimony.[6] Rather, the Board stated that Roofr "present[ed] evidence" supporting its challenge, and cited *only* the RSMeans Dictionary and Roofr's attorney argument based on the dictionary. Appx11. The Board then concluded that, "[w]ith *this* evidence"—i.e., the evidence the Board cited—Roofr adequately supported its challenge to the dependent claims. *Id.* (emphasis added). Roofr's expert testimony was not among the cited evidence. Consistent with this reading of the Board's final written decision, a Board panel member made clear at the oral hearing that he understood Roofr to be

---

[6] And for good reason—Mr. Cummings was not an "expert" at all. He has practically no experience calculating roofing area, was unable to determine the area of even the simplest roofs during his deposition, and confused basic roofing concepts such as surface area and footprint. Appx361-362 (citing Appx5073-5074(78:21-79:1)); Appx450-452 (citing Appx5064(69:3-12); Appx5066-5070(71:11-75:18)).

relying solely on the RSMeans Dictionary for the weighted-average limitation. BBr. 49-50 n.8.

To be sure, the Board did *indirectly* cite a single paragraph of Roofr's expert testimony that was cited in Roofr's reply. Appx11 (citing Appx407; Appx1541-15422(¶97). But that indirect citation hardly counts as reliance on and adoption of the testimony. *See DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1376 (Fed. Cir. 2018) (noting that it was "questionable" whether the Board's obviousness analysis was based on the petitioner's expert testimony given that "the Board never cited her testimony directly"). And, because the Board never relied on Roofr's expert testimony, the Court cannot affirm based on such testimony. *See In re Google LLC*, 56 F.4th 1363, 1367-1368 (Fed. Cir. 2023); *see DSS Tech.*, 885 F.3d at 1376 n.4 ("Under the *Chenery* doctrine, we decline Apple's invitation to consider evidence that the Board did not cite in its decision.").

In any event, the (indirectly) cited paragraph of testimony does not help Roofr. In that paragraph, Roofr's expert conclusorily asserted that "weighted average calculations are extremely common in construction, including roofing, and were in widespread use many years before the '538 patent." Appx1541-1542(¶97). That assertion gets Roofr nowhere since "[i]t does not suffice to meet the motivation to combine requirement to recognize that" an element was "known in the art." *Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*, 97 F.4th 882,

886 (Fed. Cir. 2024). Further, the only evidence Roofr's expert proffered to prove that weighted averages were known is the RSMeans Dictionary, which does not refer to roofing applications at all. *See id.* His testimony is thus entirely circular.

Roofr also cites (at 50) two additional paragraphs of expert testimony that the Board did not cite (not even indirectly). *See* RBr. 50 (citing Appx1515-1516(¶46); Appx4988(¶67)). But those paragraphs likewise do not help Roofr. Appx1515-1516(¶46) is a paragraph of Roofer's expert declaration in which he states—without citing any evidence—that "calculating a predominant pitch" using a weighted average had been "used in the art for decades." That is implausible. If calculating a predominant pitch using a weighted average truly had been "used in the art for decades," as Roofr's expert opined, surely he would have provided *some* evidence that it was actually done to support his obviousness claim. He did not—instead, he tried to stitch together a reference (Bailey) describing measuring the most-common pitch of a roof and another reference (RSMeans Dictionary) saying that weighted averages were known. As explained in Pictometry's opening brief, that is insufficient to prove obviousness. *See* BBr. 51 (collecting cases); *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017) ("[W]e cannot allow hindsight bias to be the thread that stitches together prior art patches into something that is the claimed invention.").

Roofr's other citation, Appx4988(¶67), is testimony from *Pictometry's*

expert. Far from supporting Roofr's argument, the testimony undermines it. Pictometry's expert opined that, "[t]o the extent a POSITA desired to use a single 'predominant slope' for the entire roof, *a POSITA would have been motivated to use the slope that covered the majority of the roof, rather than an average of multiple slopes*." (emphasis added). Thus, Pictometry's expert explained that a skilled artisan would *not* have been motivated to use an average—much less a weighted average—in place of Bailey's most-common pitch.

The Board did not discuss or even cite this contradictory testimony from Pictometry's expert, which is yet another basis for vacatur. *See Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc) (plurality) ("[A]n agency's refusal to consider evidence bearing on the issue before it is, by definition, arbitrary and capricious … . [T]he agency must take account of all the evidence of record, including that which detracts from the conclusion the agency ultimately reaches."). The bottom line is that the Board never made an express finding that the dependent claims' weighted-average limitations are obvious based on what Bailey actually discloses. Rather, it "substituted its own expertise for record evidence" that Roofr "was obligated to provide." *Brand v. Miller*, 487 F.3d 862, 870 (Fed. Cir. 2007). It is difficult to conceive a clearer example of an APA violation. *See* BBr. 47-48; *contra* RBr. 10.

Finally, Roofr states in passing (at 50) that "Roofr provided a motivation to combine the references as proposed." But that does not address the problem, and in fact, only makes it worse. To the extent Roofr is referring to a motivation to combine Bailey with the RSMeans Dictionary, that argument fails because the dictionary was not part of Roofr's obviousness grounds. To the extent Roofr is referring to a motivation to *modify* Bailey, that argument also fails because Roofr never provided such a motivation. Nor did Roofr discuss the alleged finite number of options for computing a predominant pitch. Rather, it relied *solely* on the dictionary to show that weighted averages were "known." That rationale is legally insufficient to support the Board's obviousness determination. *See* BBr. 48-51.

### B. Roofr's Defense of the Board's Ruling as to Claim 18 Distorts Both the Petition and the Board's Findings (or Lack Thereof).

Roofr barely tries to defend the Board's ruling with respect to claim 18. That claim requires pitch factors (rather than pitch values, as in claim 11) to be used to calculate a predominant pitch using a weighted average. Appx39(17:16-18). As The cited portion of Bailey on which Roofr relied (a slope-conversion table) does not meet that requirement. Rather, it discloses using pitch factors to calculate *roof area* (not predominant pitch). Appx350-351; Appx443; BBr. 53.

The Board did not address that argument in its single-paragraph analysis. It acknowledged the argument, to be sure, but it never resolved it. *See* Appx11. Roofr nevertheless contends (at 52-53) that "the Board disagreed with" Pictometry's

argument. Tellingly, Roofr provides no citation to the Board's decision to support such a contention, and for good reason—there is nothing to cite. The Board's failure to grapple with Pictometry's argument constitutes an APA violation that requires at least vacatur. BBr. 53.

On the merits, Roofr tries to backfill its petition by cross-citing its analysis for claim 11. Roofr argues that it relied on Bailey's conversion table merely to show that a skilled artisan "would have known that a slope can be represented as a pitch factor" and that it relied "on the same analysis as claim 11" to prove obviousness of claim 18. RBr. 52. But the Board did not adopt such reasoning. Once again, the Court cannot affirm on evidence and argument the Board never considered. *See Google*, 56 F.4th at 1367-1368.

Roofr's argument on appeal, while cursory, is more detailed than the one offered below. The petition argument for claim 18 comprised just two sentences:

> Bailey also expressly teaches using the same 'pitch factors' shown in Figure 7 of the '538 patent to calculate area (as shown below). Ex. 1010 at 137. Thus, Bailey also renders obvious 'wherein the predominant pitch is based on a weighted average of individual pitch factors for two or more portions of the roof." *See also* claims 10, 11; EX. 1003 at ¶ 128.

Appx128. Even assuming that Roofr's first sentence is correct, its second sentence does not follow from the first. The mere fact that Bailey teaches using pitch factors

to calculate *area* has no bearing on whether Bailey renders obvious a limitation requiring calculating *predominant pitch* based on pitch factors.

Roofr's cross-reference to claim 11, moreover, does not help. That claim requires using pitch values (not pitch factors) to determine a predominant pitch. Appx38(16:20-23). Even if it were obvious to calculate Bailey's predominant slope using a weighted average of *pitch values* (it is not), Roofr never showed that it also would have been obvious to calculate the predominant slope using a weighted average of *pitch factors*. *See* Appx349-351; Appx443. And even if one *could* do so, that still would not be enough. *Adidas AG v. Nike, Inc.*, 963 F.3d 1355, 1359 (Fed. Cir. 2020) ("The obviousness inquiry does not merely ask whether a skilled artisan could combine the references, but instead asks whether they would have been motivated to do so." (cleaned up)). Nor does Roofr's expert testimony help. *See* Appx1551-1552(¶127). The cited testimony *repeats verbatim* the two-sentence argument made in the petition. *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence.").

Roofr's attempt to backfill the Board's analysis simply cannot provide a basis for affirmance. *See Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023) ("[W]e have rejected, many times, post-hoc attempts on appeal to include additional, new arguments not contained in the petition."). Indeed, this Court

cannot "develop arguments for a limitation that the petition simply did not make." *AMP Plus, Inc. v. DMF, Inc.*, 131 F.4th 1320, 1325 (Fed. Cir. 2025). The Court should reverse.

## CONCLUSION

The Court should reverse, or at the very least, vacate, the Board's ruling.

May 28, 2025

Respectfully submitted,

*/s/ Richard A. Crudo*

Richard A. Crudo
Michael D. Specht
Jonathan Tuminaro
William H. Milliken
Richard M. Bemben
Jennifer Meyer Chagnon
Steven M. Pappas
STERNE KESSLER GOLDSTEIN &
FOX PLLC
1101 K Street, NW
Floor 10
Washington, DC 20005
(202) 371-2600

*Counsel for Appellant*
*Pictometry International Corporation*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-2321

**Short Case Caption:** Pictometry International Corporation v. Roofr Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,962 words.

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 05/28/2025 Signature: /s/ Richard A. Crudo

Name: Richard A. Crudo

Save for Filing